NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Merrimack
No. 2021-0146

PETITION OF THE STATE OF NEW HAMPSHIRE

Argued: October 21, 2021
Opinion Issued: February 4, 2022

John M. Formella, attorney general (Elizabeth Velez, attorney, on the brief, and Samuel R.V. Garland, assistant attorney general, orally), for the State.

American Civil Liberties Union of New Hampshire Foundation, of Concord (Gilles R. Bissonnette and Henry R. Klementowicz on the joint brief, and Henry R. Klementowicz orally); R. Peter Decato, of Lebanon, on the joint brief; Albert E. Scherr, of Concord, on the joint brief; and Wadleigh, Starr & Peters, of Manchester (Robin D. Melone on the joint brief), for defendant Jeffrey Hallock-Saucier.

Law Office of Carl D. Olson, of Londonderry (Carl D. Olson, on the joint brief), for defendant Nicholas Fuchs.

Alexander J. Vitale, New Hampshire public defender, of Concord, on the joint brief, for defendant Jacob Johnson.

HICKS, J.  The State filed a petition for original jurisdiction, see Sup. Ct. R. 11, seeking certiorari review of a decision of the Superior Court (Schulman, J.) denying the State's motions for protective orders in separate cases against the defendants, Nicholas Fuchs, Jacob Johnson, and Jeffrey Hallock-Saucier. We reverse and remand.

The following facts were recited in the trial court's order or relate the contents of documents in the record.  This petition for original jurisdiction arises out of three separate criminal cases, each against one of the defendants. In each case, the State determined that it was required to provide the defendant with information from one or more police officer's personnel files because the information was potentially exculpatory.  See State v. Laurie, 139 N.H. 325, 330 (1995); Brady v. Maryland, 373 U.S. 83, 87 (1963).  Citing the court's authority under New Hampshire Rule of Criminal Procedure 12(b)(8), the State filed a motion for a protective order of discovery materials in each case, seeking an order that would prohibit "Defense Counsel  . . . from sharing or further disseminating these confidential documents and the confidential information contained therein with anyone other than Defense Counsel's staff and the Defendant."  Counsel for each defendant assented to the proposed protective order appended to the State's motion although, after the court denied those motions, Johnson filed a notice that "he no longer assents to the State's motions for protective orders."

In the cases against Fuchs and Johnson, the court denied the motions, by margin order, without prejudice.  In each case, the court opined that the material may constitute public records subject to disclosure under the Right-to-Know Law, see RSA chapter 91-A (2013 & Supp. 2021), unless, for specific or particularized reasons, their disclosure would result in an invasion of privacy.  The court implicitly invited the State to make such a particularized showing.  In both cases, the State moved for reconsideration.

In the case against Hallock-Saucier, the court denied the motion by margin order, referencing a "separate narrative order to be issued within the day."  In that subsequent order, the court denied the State's: (1) motion for a protective order in the case against Hallock-Saucier; (2) motions for reconsideration in the cases against Fuchs and Johnson; and (3) motions to seal and associated motions for reconsideration in all three cases. Acknowledging that it had the authority to supervise discovery in criminal cases by issuing protective orders, the court explained that it would not, however, "ordinarily issue a protective order that gags the parties and counsel from sharing what is otherwise available to the general public upon demand." "Thus," the court elaborated, "if the State provides discovery of documents that

2

are subject to mandatory public disclosure under the Right to Know statute, RSA 91-A:4, a protective order is inappropriate."

The court observed sua sponte that the legal landscape regarding the Right-to-Know Law had recently changed with our overruling of Union Leader v. Fenniman, 136 N.H. 624 (1993), overruled by Seacoast Newspapers v. City of Portsmouth, 173 N.H. 325, 337 (2020), and our decision in Union Leader Corp. v. Town of Salem, 173 N.H. 345, 357 (2020). The court observed that while "Fenniman did not actually require the issuance of protective orders," it "fostered a culture of confidentiality with respect to internal police misconduct and discipline records." It then noted that our decision in Union Leader Corp. "did away with the categorical approach taken by Fenniman and replaced it with a fact-specific balancing test" that "requires the court to determine whether the release of . . . records [relating to police internal personnel practices and officer discipline] would constitute an invasion of privacy." The court invited the State "to make a fact-specific case that public disclosure of the information would result in an invasion of privacy," but stated that it would "not issue gag orders in blank." The court also considered the State's reliance on RSA 105:13-b to be "misplaced." See RSA 105:13-b (2013).

The trial court subsequently stayed the proceedings in each case to allow the State to seek review in this court, accepted redacted copies of prior pleadings, and denied the State's motion to reconsider in the case against Hallock-Saucier. The State then filed its petition for original jurisdiction with this court, which we accepted. Thereafter, the State withdrew its request for review of the trial court's denials of the State's motions to seal. Accordingly, only the trial court's rulings on the protective orders are now at issue.

"Certiorari is an extraordinary remedy that is not granted as a matter of right, but rather at the court's discretion." Petition of N.H. Div. of State Police, 174 N.H. 176, 180 (2021). "Our review of the trial court's decision on a petition for writ of certiorari entails examining whether the court acted illegally with respect to jurisdiction, authority or observance of the law, or unsustainably exercised its discretion or acted arbitrarily, unreasonably, or capriciously." Id.

Generally, we "review trial court decisions regarding discovery management and related issues deferentially under our unsustainable exercise of discretion standard." Id. at 184 (quotation omitted). When "the court's ruling is based on its construction of a statute," however, "our review is de novo." Id. (quotations omitted).

The State first argues that the trial court erred in concluding that police personnel file information is not confidential once it is disclosed to a defendant under RSA 105:13-b. In requesting that the trial court grant the protective orders at issue, the State contended that they were "necessary to ensure the confidentiality of the law enforcement officer[s'] personnel records while

3

meeting the State's competing interest in providing potentially exculpatory evidence in a criminal matter." The State cited RSA 105:13-b as authority for the confidentiality of police personnel files. The trial court disagreed, concluding that nothing in that statute "suggests that . . . exculpatory evidence, once disclosed, must be kept confidential." The State now contends that the trial court's interpretation of RSA 105:13-b is "erroneous because it overlooks the statute's plain language, statutory purpose, and disregards the context of the statute as a whole."

When engaging in statutory interpretation, we discern "the intent of the legislature as expressed in the words of the statute considered as a whole." Petition of N.H. Div. of State Police, 174 N.H. at 184. "We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning." Id. "We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include." Id. "We construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result." Id. "Moreover, we do not consider words and phrases in isolation, but rather within the context of the statute as a whole, which enables us to better discern the legislature's intent and to interpret statutory language in light of the policy or purpose sought to be advanced by the statutory scheme." Id.

RSA 105:13-b provides:

**Confidentiality of Personnel Files.**

I. Exculpatory evidence in a police personnel file of a police officer who is serving as a witness in any criminal case shall be disclosed to the defendant. The duty to disclose exculpatory evidence that should have been disclosed prior to trial under this paragraph is an ongoing duty that extends beyond a finding of guilt.

II. If a determination cannot be made as to whether evidence is exculpatory, an in camera review by the court shall be required.

III. No personnel file of a police officer who is serving as a witness or prosecutor in a criminal case shall be opened for the purposes of obtaining or reviewing non-exculpatory evidence in that criminal case, unless the sitting judge makes a specific ruling that probable cause exists to believe that the file contains evidence relevant to that criminal case. If the judge rules that probable cause exists, the judge shall order the police department employing the officer to deliver the file to the judge. The judge shall examine the file in camera and make a determination as to whether it

contains evidence relevant to the criminal case. Only those portions of the file which the judge determines to be relevant in the case shall be released to be used as evidence in accordance with all applicable rules regarding evidence in criminal cases. The remainder of the file shall be treated as confidential and shall be returned to the police department employing the officer.

RSA 105:13-b.

The State argues that RSA 105:13-b's plain language "makes police personnel files broadly confidential with limited exceptions to protect a defendant's constitutional rights to discovery." The defendants, on the other hand, agree with the trial court that nothing in the text of the statute "requires confidentiality of exculpatory evidence." Rather, the defendants argue, "the text of the statute is clear that only the remainder of a police officer's personnel file—that which is not produced to the defense—is to remain confidential in the criminal case."

The defendants' construction focuses on the statute's final sentence and, in particular, the word "remainder." We decline to adopt their interpretation because it fails to place that sentence within the context of the statute as a whole. See Petition of N.H. Div. of State Police, 174 N.H. at 184. Their interpretation likewise fails to consider "the policy or purpose sought to be advanced by the statutory scheme." Id.

In Duchesne v. Hillsborough County Attorney, 167 N.H. 774 (2015), we recognized the link between RSA 105:13-b and the prosecutor's duty of disclosure under Brady and Laurie: "Although the prosecutorial duty . . . is of constitutional magnitude, the legislature has enacted a statute, RSA 105:13–b, which is designed to balance the rights of criminal defendants against the countervailing interests of the police and the public in the confidentiality of officer personnel records." Duchesne, 167 N.H. at 780. In so doing, we tacitly acknowledged the general confidentiality of police personnel records, which then yields to the rights of criminal defendants under Brady and Laurie. Similarly, in Gantert v. City of Rochester, 168 N.H. 640, 646 (2016), we cited RSA 105:13-b for the proposition that "police personnel files are generally confidential by statute."

Even if, as the defendants argue, these statements are dicta in Duchesne and Gantert, they are consistent with the statute's language considered within the context of the statute as a whole. See Petition of N.H. Div. of State Police, 174 N.H. at 184. We begin with the statute's title: "Confidentiality of Personnel Files." RSA 105:13-b (bolding omitted). "While the title of a statute is not conclusive of its interpretation, it provides significant indication of the legislature's intent in enacting the statute." Garand v. Town of Exeter, 159 N.H. 136, 142 (2009) (quotation omitted). We conclude that the title evinces

5

the legislature's intent that police personnel files potentially subject to disclosure under RSA 105:13-b start with a presumption of general confidentiality.

Turning to RSA 105:13-b's substantive provisions, we noted in Duchesne that the statute "addresses three situations that may exist with respect to police officers who appear as witnesses in criminal cases." Duchesne, 167 N.H. at 781. Under paragraph I, "[e]xculpatory evidence in a police personnel file of a police officer who is serving as a witness in any criminal case shall be disclosed to the defendant." RSA 105:13-b, I (emphases added). The disclosure required under paragraph I is explicitly tied to a particular criminal defendant in a particular criminal case. No further dissemination is either required or permitted.

"[P]aragraph II covers situations in which there is uncertainty as to whether evidence contained within police personnel files is, in fact, exculpatory. It directs that, where such uncertainty exists, the evidence at issue is to be submitted to the court for in camera review." Duchesne, 167 N.H. at 781 (citation omitted); see RSA 105:13-b, II.

"Finally, paragraph III covers evidence that is non-exculpatory but may nonetheless be relevant to a case in which an officer is a witness." Duchesne, 167 N.H. at 782; see RSA 105:13-b, III. "[T]his paragraph prohibits the opening of a police personnel file to examine the same for non-exculpatory evidence unless the trial judge makes a specific finding that probable cause exists to believe that the file contains evidence relevant to the particular criminal case." Duchesne, 167 N.H. at 782; see RSA 105:13-b, III. If the judge finds probable cause, he or she is to review the file in camera to determine "whether it contains evidence relevant to the criminal case." RSA 105:13-b, III (emphasis added). "Only those portions of the file which the judge determines to be relevant in the case shall be released to be used as evidence in accordance with all applicable rules regarding evidence in criminal cases." Id. (emphasis added). Again, disclosure is tied to a particular criminal case and is for the explicit purpose of "be[ing] used as evidence." Id. No further dissemination or other use is either required or permitted.

The final sentence states: "The remainder of the file shall be treated as confidential and shall be returned to the police department employing the officer." RSA 105:13-b, III (emphasis added). Read in context, this sentence merely states that material not required to be disclosed to the defendant retains its general confidentiality and is to be returned to the employing police department. Thus, read as a whole, the statute details the procedure for turning over to a criminal defendant any exculpatory or relevant evidence found in the personnel files of any police officer testifying in the criminal case while maintaining the confidentiality of those files for all other purposes.

6

The defendants argue, to the contrary, that RSA 105:13-b "mandates disclosure of exculpatory information without conditions" and "does not require confidentiality or that a protective order be issued for" such evidence. No such mandate appears in the statute. See Petition of N.H. Div. of State Police, 174 N.H. at 184 (noting that we will not add language to a statute that the legislature did not see fit to include). Moreover, the defendants fail to read the statute as a whole. By starting with a presumption of confidentiality and then directing limited disclosure to specific persons for specific purposes, the legislature directed that for all other purposes, the information remains generally confidential. See Gentry v. Warden, N. N.H. Correctional Facility, 163 N.H. 280, 282 (2012) (noting "[t]he familiar doctrine of expressio unius est exclusio alterius ('the mention of one thing excludes another')").

Support for the foregoing statutory interpretation includes a case construing a California statute that, while different from RSA 105:13-b in many respects, is also "intended to balance the need of criminal defendants to relevant information and the legitimate concerns for confidentiality of police personnel records." Alford v. Superior Ct., 107 Cal. Rptr. 2d 245, 255 (Ct. App. 2001) (quotation omitted), rev'd on other grounds, 63 P.3d 228 (Cal. 2003). Unlike RSA 105:13-b, the California statute explicitly imposes upon courts "both broad discretionary and mandatory duties to issue a protective order in any particular case." Id. at 262. Nevertheless, in interpreting the scope of those duties, the California Court of Appeal employed reasoning that we find persuasive.

The provision construed in Alford requires a court "to order that the disclosed material 'not be used for any purpose other than a court proceeding pursuant to applicable law.'" Id. at 259 (quoting pertinent provision of the California Evidence Code). The court rejected the defendants' contentions that "the lack of language in such subdivision limiting use of the material to the specific court proceeding evidenced the Legislature's intent not to impose a case specific limit," and that a protective order could not, for instance, "restrict the use of disclosed Brady material from one public defender case to another." Id. at 252, 253 (footnote omitted). The court reasoned:

> It has repeatedly been stressed that the protective order sections of [the California Evidence Code] are part of an overall carefully balanced statutory scheme that declares police officer personnel records and any information obtained from such records confidential unless ordered disclosed pursuant to a motion and in camera hearing under [the California Evidence Code]. Under such scheme, a defendant must convince a court that the information sought is material to his or her defense. . . . Because the disclosure of such information from police officer personnel records "[i]n any case" is prohibited "except by discovery pursuant to . . . the Evidence Code[,]" it would be illogical to interpret, as defendants

7

would have us do, the phrase "other than a court proceeding pursuant to applicable law" to mean that once information is released to one defendant, the information is free to be shared with any defendant and for use in any other court proceeding. To so interpret would completely destroy the carefully crafted statutory process by which [such] information is released.

Id. at 260 (citations omitted). Although the Supreme Court of California reversed Alford on other grounds, it approved the interpretive reasoning that we find instructive: "As the Court of Appeal reasoned, its interpretation of [the California Evidence Code] harmonizes the entire statutory scheme and retains its effectiveness by furthering the legitimate interests of both the defendant and the peace officer." Alford v. Superior Ct., 63 P.3d 228, 234 (Cal. 2003), disapproved on other grounds by Facebook v. Superior Ct. of San Diego, 471 P.3d 383, 392 n.6 (Cal. 2020).

Much like the California Court of Appeal in Alford, we conclude that because material disclosed under RSA 105:13-b must first be determined to be exculpatory or relevant in a particular criminal case, and then is to be disclosed specifically to the defendant, to interpret the statute to allow disclosure or use beyond the defendant in that particular case "would completely destroy the carefully crafted statutory process by which [such] information is released." Alford, 107 Cal. Rptr. 2d at 260.

For all of the above reasons, we conclude that the trial court erred in its interpretation of RSA 105:13-b. We also conclude that the trial court erred in failing to find good cause for the issuance of protective orders in these cases. See N.H. R. Crim. P. 12(b)(8) ("Upon a sufficient showing of good cause, the court may at any time order that discovery required hereunder be denied, restricted, or deferred, or make such other order as is appropriate."). Given the confidentiality accorded police personnel files by RSA 105:13-b, we hold that the State has shown good cause, as a matter of law, for the issuance of protective orders in the cases now before us.[1]

Finally, the defendants argue that "the issuance of the protective order[s] under the circumstances presented in these three cases is unconstitutional under the First Amendment to the United States Constitution and Part I, Article 22 of the New Hampshire Constitution." They contend that "the proposed protective orders impermissibly act as a prior restraint on speech" and "are unconstitutionally one-sided."

---

[1] In light of this holding, we need not address the State's contention that the trial court erred when it sua sponte "reframed the assented-to criminal discovery motions as a [Right-to-Know Law] case."

8

We decline to address the merits of these constitutional arguments because they were not presented to the trial court.  See State v. Blackmer, 149 N.H. 47, 48 (2003) (noting that, generally, "we will not review any issue that the defendant did not raise before the trial court.")  The trial court hypothesized that "if the State provides discovery of documents that are subject to mandatory public disclosure under the Right to Know statute, . . . [a protective] order would be a prior restraint on speech relating to a matter of public record." (Citation omitted.)  Such oblique references to constitutional concerns are insufficient to trigger review.  Nevertheless, we note that Seattle Times Co. v. Rhinehart, 467 U.S. 20 (1984), and its progeny should guide the trial court on remand and adequately address any First Amendment concerns.

In Seattle Times, the United States Supreme Court addressed "the issue whether parties to civil litigation have a First Amendment right to disseminate, in advance of trial, information gained through the pretrial discovery process." Id. at 22.  The court specifically noted that discovery materials possess a distinct characteristic relevant to a First Amendment analysis:

> As in all civil litigation, petitioners gained the information they wish to disseminate only by virtue of the trial court's discovery processes.  As the Rules authorizing discovery were adopted by the state legislature, the processes thereunder are a matter of legislative grace.  A litigant has no First Amendment right of access to information made available only for purposes of trying his suit.  Thus, continued court control over the discovered information does not raise the same specter of government censorship that such control might suggest in other situations.

Id. at 32 (citation omitted).  As summarized by the First Circuit Court of Appeals, Seattle Times "held that the first amendment is not offended if three criteria are met: (1) there is a showing of good cause as required by [Federal Rule of Civil Procedure 26(c)]; (2) the restriction is limited to the discovery context; and (3) the order does not restrict the dissemination of information obtained from other sources." Anderson v. Cryovac, Inc., 805 F.2d 1, 7 (1st Cir. 1986).

Although Seattle Times involved civil litigation, courts have applied it in the criminal context by, in particular, substituting the good cause standard of Federal Rule of Criminal Procedure 16(d) for that of Federal Rule of Civil Procedure 26(c).  See, e.g., United States v. Bulger, 283 F.R.D. 46, 51-52 (D. Mass. 2012).  As noted previously, New Hampshire Rule of Criminal Procedure 12(b)(8) also requires good cause for the issuance of a protective order and, given the confidentiality accorded police personnel files by RSA 105:13-b, the State has shown good cause, as a matter of law, for the issuance of protective

9

orders in the cases now before us.  We remand for the trial court to issue the requisite protective orders in these cases.

<u>Reversed and remanded</u>.

BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.