Hooksett District Court
No. 2009-780

JEANMAX DARBOUZE

v.

NANCY CHAMPNEY

Submitted: May 13, 2010
Opinion Issued: September 17, 2010

*J. Miller & Associates, PLLC*, of Concord (*Anthony Santoro* on the brief), for the plaintiff.

*Backus, Meyer & Branch, LLP*, of Manchester (*B.J. Branch* on the brief), for the defendant.

CONBOY, J. In this landlord-tenant matter, the tenant, Nancy Champney, appeals an eviction order of the Hooksett District Court (*LaPointe*, J.) in favor of the landlord, Jeanmax Darbouze. The trial court found that: (1) use of the words "Notice to Quit" rather than "Eviction Notice" was not fatally defective to the landlord's action; (2) use of "Mrs. Nancy" or "Nancy" on the demand for rent and eviction notice, rather than the tenant's full name, did not warrant dismissal of the action; and (3) the landlord provided seven days' notice as required by statute. We affirm.

The trial court's order reflects the following facts. For several years, Champney has rented 19 Townhouse Road in Allenstown. The monthly rent is $1,100 and Champney deducts $100 per month in exchange for cleaning the yard and making routine or simple repairs. In the summer of 2009, Champney complained of water leaking from the kitchen ceiling. Darbouze attempted to repair the ceiling, but was denied entry by Champney's son, who complained that Darbouze had not provided twenty-four hour prior notice. Champney did not pay rent due on August 1, and on August 6, Darbouze served her with a "Demand For Rent" and a "Notice To Quit." The notices identified Champney as "Mrs. Nancy" and "Nancy" and gave her until August 13 to vacate the premises.

After Champney failed to vacate the premises, Darbouze filed a landlord-tenant writ seeking her eviction. Champney moved to dismiss the action, claiming that the notices were defective. The trial court denied the motion and entered judgment in favor of Darbouze. This appeal followed.

Champney first argues that the eviction notice entitled "Notice To Quit" is defective. In 2006, several statutes were amended to replace the term "Notice To Quit" with the term "Eviction Notice." Laws 2006, 192:3. Champney contends that because of these legislative amendments, eviction proceedings initiated by forms entitled "Notice To Quit" must be dismissed as a matter of law.

"The interpretation of a statute is a question of law, which we review *de novo.*" *Lally v. Flieder*, 159 N.H. 350, 351 (2009). "We are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole." *Id.* "We first examine the language of the statute, and, where possible, we ascribe the plain and ordinary meanings to the words used." *Id.* at 351-52. "When the language of a statute is clear on its face, its meaning is not subject to modification." *Id.* at 352. "We will neither consider what the legislature might have said nor add words that it did not see fit to include." *Id.*

RSA 540:2 governs the process for evicting a tenant from residential property and requires a landlord to give to the tenant "a notice in writing *to quit* the premises in accordance with RSA 540:3" and RSA 540:5 (relating to service, which is not an issue here). RSA 540:2, II (2007) (emphasis added). RSA 540:3 reads, in part:

> II. For all residential tenancies, . . . 7 days' notice shall be sufficient if the reason for termination is as set forth in RSA 540:2, II(a), (b), or (d) [rent arrearage, damage to the premises, or health or safety reasons].
>
> III. The eviction notice shall state with specificity the reason for the eviction.
>
> IV. If the eviction notice is based on nonpayment of rent, the notice shall inform the tenant of his or her right, if any, to avoid the eviction by payment of the arrearages and liquidated damages in accordance with RSA 540:9.
>
> V. For the purpose of interpreting or enforcing any lease or rental agreement for residential tenants in effect on July 1, 2006, a notice to quit shall be deemed an eviction notice under this section.

RSA 540:3 (2007).

■ The plain language of RSA 540:3 sets forth three requirements that a landlord must include in any notice to evict a residential tenant for rent arrearage. The landlord must provide notice of at least seven days, must state with specificity the reason for the eviction, and, if the eviction is based on nonpayment of rent, must inform the tenant of his or her right to avoid the eviction by paying arrearages and liquidated damages. RSA 540:3 does not require use of the term "Eviction Notice."

■ In this case, the eviction notice stated that the reason for eviction was neglect or refusal to pay rent in the amount of $2,350, it gave Champney seven days "to quit and deliver . . . possession of the property" to the landlord, and it informed Champney of her right to avoid eviction by paying all arrearages and $15 in liquidated damages. Accordingly, the notice meets the three requirements set forth in RSA 540:3.

■ Champney argues that RSA 540:3, V establishes that any notice entitled "Notice To Quit" is defective as a matter of law. Champney reads the statute too broadly. Rather than rendering the term "notice to quit" legally ineffective, subsection V simply provides a rule of interpretation: In any residential lease agreement in effect on July 1, 2006, the term "notice to quit" shall be interpreted as "eviction notice." The statute does not require use of the term "eviction notice." Thus, while the better practice would be the use of the term "eviction notice," we find no statutory prohibition against the use of the term "notice to quit," as long as the substance of the notice satisfies the three enumerated requirements.

Champney next argues that because the "Demand For Rent" and "Notice To Quit" used only her first name, the notices were defective as a matter of law, and the action should have been dismissed. We disagree.

■ RSA 540:5, II (2007) requires the district court to provide standard forms for a demand for rent and eviction notice. A landlord is not required to use these forms, but a valid demand for rent or eviction notice must include the same information that is requested on such forms. It is unclear from the record whether Darbouze used an outdated Notice To Quit form from the district court or a form which he created. Champney argues that because new eviction notice forms provided by the district court request the tenant's name, the use of "Nancy" or "Mrs. Nancy" is legally insufficient.

■ Champney has attached to her appendix a copy of the forms now made available by the district court. The first line of the Eviction Notice requests "Tenant Name." Nothing on the forms specifies that a landlord must provide the tenant's first and last name. Thus, the question before us is whether or not this tenant received sufficient notice. In her brief, Champney acknowledges service of the Demand For Rent and Notice To

Quit. There is no question that Champney received the notices and was aware that Darbouze was beginning an eviction proceeding against her. The better practice is for a landlord to state the full name of the tenant, when known, on any notices. But where, as here, there is no dispute the tenant received the notices and was aware they were directed to her, the lack of a last name is not a fatal defect requiring dismissal of the action.

Finally, Champney contends that the Notice To Quit did not provide seven "clean days" notice and, therefore, the notice was defective as a matter of law, requiring dismissal of the action. Again, we disagree.

District Court Rule 1.1A provides that:

> In computing any period of time prescribed or allowed by these rules, by order of court, or by applicable law, the day of the act, event, or default after which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, Sunday, or a legal holiday . . . .

DIST. CT. R. 1.1A.

■ In this case, the eviction notice was served on August 6, 2009, and for purposes of computing time, this first day is not included. Seven days after August 6, 2009, was Thursday, August 13. This last day of the period is included, and because it was not a Saturday, Sunday, or legal holiday, this was the date on which Champney was required to vacate the premises. Because the notice specified that Champney had until August 13 to do so, the notice complied with the requirements of RSA 540:3, II.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, DUGGAN and HICKS, JJ., concurred.