NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

———————————————

Hillsborough-southern judicial district
No. 2019-0279


NEW HAMPSHIRE CENTER FOR PUBLIC INTEREST JOURNALISM <u>&</u> <u>a</u>.

v.

NEW HAMPSHIRE DEPARTMENT OF JUSTICE

Argued: September 16, 2020
Opinion Issued: October 30, 2020

American Civil Liberties Union of New Hampshire, of Concord (Gilles R. Bissonnette and Henry R. Klementowicz on the brief, and Mr. Bissonnette orally), and Moir & Rabinowitz, PLLC, of Concord (James H. Moir on the brief), for plaintiffs New Hampshire Center for Public Interest Journalism, The Telegraph of Nashua, Newspapers of New England, Inc., Seacoast Newspapers, Inc., Keene Publishing Corporation, and American Civil Liberties Union of New Hampshire.


Malloy & Sullivan, Lawyers Professional Corporation, of Hingham, Massachusetts (Gregory V. Sullivan on the brief and orally), and Douglas, Leonard & Garvey, P.C., of Concord (Charles G. Douglas, III on the brief), for plaintiff Union Leader Corporation.

Gordon J. MacDonald, attorney general (Daniel E. Will, solicitor general, on the brief and orally), for the New Hampshire Department of Justice.

Milner & Krupski, PLLC, of Concord (John S. Krupski on the memorandum of law), for the New Hampshire Police Association and Matthew Jajuga, as amici curiae.

Daniel M. Conley, of Goffstown, on the brief for the New Hampshire Association of Chiefs of Police, as amicus curiae.

Brennan, Lenehan, Iacopino & Hickey, of Manchester (Jaye L. Rancourt on the memorandum of law) for the New Hampshire Association of Criminal Defense Lawyers, as amicus curiae.

HICKS, J. The New Hampshire Department of Justice (DOJ) appeals an order of the Superior Court (Temple, J.) denying its motion to dismiss the petition of the plaintiffs, New Hampshire Center for Public Interest Journalism, The Telegraph of Nashua, Union Leader Corporation, Newspapers of New England, Inc., Seacoast Newspapers, Inc., Keene Publishing Corporation, and American Civil Liberties Union of New Hampshire, seeking a declaration that the "Exculpatory Evidence Schedule" (EES), excluding the names of police officers with pending requests to be removed from the list, must be made public pursuant to the Right-to-Know Law, RSA chapter 91-A, and Part I, Article 8 of the New Hampshire Constitution. In denying the motion to dismiss, the trial court rejected the DOJ's arguments that the EES is "confidential" under RSA 105:13-b (2013) and that it is exempt from disclosure under the Right-to-Know Law either because it is an "internal personnel practice" or a "personnel file" under RSA 91-A:5, IV (2013). We uphold the trial court's determinations that the EES is neither "confidential" under RSA 105:13-b nor exempt from disclosure under the Right-to-Know Law as an "internal personnel practice" or a "personnel file." Nonetheless, we vacate the trial court's decision and remand for it to determine, in the first instance, whether as the DOJ contends, the EES constitutes an "other file[] whose disclosure would constitute invasion of privacy." RSA 91-A:5, IV.

I. Facts

The trial court recited the following facts. The DOJ currently maintains a list of police officers who have engaged in misconduct reflecting negatively on

their credibility or trustworthiness.  The list, formerly known as the "Laurie List," is now called the EES.  See State v. Laurie, 139 N.H. 325, 327, 330, 333 (1995) (overturning a defendant's murder conviction because the State failed to disclose certain employment records of a testifying detective that "reflect[ed] negatively on the detective's character and credibility").  The EES is a spreadsheet containing five columns of information: (1) officer's name; (2) department employing the officer; (3) date of incident; (4) date of notification; and (5) category or type of behavior that resulted in the officer being placed on the list.  The DOJ asserts that the EES "offers no precise information as to the specific conduct of any officer," but rather "contains a succinct, often one-word label capturing at a categorical level the behavior that placed the officer on the EES."

The EES does not physically reside in any specific police officer's personnel file.  Rather, according to the DOJ, the EES "functions solely as a reference point, to alert a prosecutor to the need to initiate an inquiry into whether an officer's actual personnel file might contain exculpatory evidence."

The plaintiffs filed requests under the Right-to-Know Law for the most recent version of the EES.  The DOJ responded by providing a version of the EES that redacted any personal identifying information of the officers on the list.  Some of the plaintiffs then requested an unredacted version of the EES that would exclude information concerning officers with pending requests to be removed from the EES.  The DOJ denied those requests, and the plaintiffs brought the instant petition seeking, among other things, a declaration that "the unredacted EES list," excluding officers who have "challenged their placement on the EES list" or for whom there has not "been a sustained finding of misconduct affecting the officer's credibility or truthfulness," is "a public record that must be made public under RSA Chapter 91-A and Part I, Article 8 of the New Hampshire Constitution."

The DOJ subsequently moved to dismiss the plaintiffs' action on the ground that they failed to state a legal basis for the relief sought.  The DOJ argued that disclosure of the EES is barred by RSA 105:13-b.  Alternatively, the DOJ maintained that the EES is exempt from disclosure under the Right-to-Know Law, either because it relates to "internal personnel practices," or because it constitutes a "personnel" or "other file[] whose disclosure would constitute invasion of privacy."  RSA 91-A:5, IV.  The trial court denied the motion.  The parties subsequently stipulated that the trial court's order constituted a final decision on the merits in favor of the plaintiffs, and the trial court so ordered.  This appeal followed.

II.    Analysis

A.  Standards of Review

In reviewing a trial court's ruling on a motion to dismiss, we consider whether the allegations in the pleadings are reasonably susceptible of a construction that would permit recovery.  Weare Bible Baptist Church v. Fuller, 172 N.H. 721, 725 (2019).  We assume the pleadings to be true and construe all reasonable inferences in the light most favorable to the plaintiffs.  Id.  We then engage in a threshold inquiry that tests the facts in the complaint against the applicable law.  Id.  When the facts alleged by the plaintiffs are reasonably susceptible of a construction that would permit recovery, we will uphold the denial of a motion to dismiss.  Id. at 725-26.

Resolving the issues in this appeal requires that we engage in statutory interpretation.  We review the trial court's statutory interpretation de novo.  Darbouze v. Champney, 160 N.H. 695, 697 (2010).  We are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole.  Id.  We first examine the language of the statute, and, where possible, we ascribe the plain and ordinary meanings to the words used.  Id.  When the language of the statute is clear on its face, its meaning is not subject to modification.  Id.  We will neither consider what the legislature might have said nor add words that it did not see fit to include.  Id.

We resolve questions regarding the Right-to-Know Law with a view to providing the utmost information in order to best effectuate the law's statutory and constitutional objectives.  N.H. Right to Life v. Dir., N.H. Charitable Trusts Unit, 169 N.H. 95, 103 (2016).  The purpose of the Right-to-Know Law "is to ensure both the greatest possible public access to the actions, discussions and records of all public bodies, and their accountability to the people."  RSA 91-A:1 (2013).  "Thus, the Right-to-Know Law furthers our state constitutional requirement that the public's right of access to governmental proceedings and records shall not be unreasonably restricted."  N.H. Right to Life, 169 N.H. at 103 (quotation omitted); see also N.H. CONST. pt. I, art. 8.  Accordingly, when interpreting the Right-to-Know Law, we broadly construe provisions favoring disclosure and interpret exemptions restrictively.  N.H. Right to Life, 169 N.H. at 103.  We also look to the decisions of other jurisdictions interpreting similar acts for guidance, including federal interpretations of the federal Freedom of Information Act (FOIA).  Id.  "Such similar laws, because they are in pari materia, are interpretatively helpful, especially in understanding the necessary accommodation of the competing interests involved."  Id. (quotation omitted).

B.  The Background of the EES

Before addressing the specific issues on appeal, we briefly discuss the background and operation of the EES.  See Duchesne v. Hillsborough County

4

Attorney, 167 N.H. 774, 777-80 (2015); Gantert v. City of Rochester, 168 N.H. 640, 645-47 (2016).  As relevant here, prosecutors have a duty to disclose exculpatory information and information that may be used to impeach the State's witnesses.  Duchesne, 167 N.H. at 777; see Brady v. Maryland, 373 U.S. 83, 87 (1963); see also United States v. Bagley, 473 U.S. 667, 675 (1985).  The duty to disclose such information applies regardless of whether the defendant requests it.  Duchesne, 167 N.H. at 777.  Moreover, the duty is not satisfied merely because an individual prosecutor is unaware that exculpatory information exists; rather, we impute knowledge among prosecutors in the same office.  Id. at 778.  Accordingly, individual prosecutors have "a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police."  Kyles v. Whitley, 514 U.S. 419, 437 (1995); see Duchesne, 167 N.H. at 778.

After we granted the criminal defendant in Laurie a new trial due to the prosecution's failure to disclose information found in a police detective's employment files and records, see Laurie, 139 N.H. at 327, 330, 333, New Hampshire law enforcement authorities began developing "Laurie Lists" to share information about officer conduct with prosecutors.  Gantert, 168 N.H. at 645.  In 2004, the attorney general placed responsibility on county attorneys to compile a confidential, comprehensive list of officers in each county who are subject to possible Laurie disclosure.  Id. at 645-46.  In a 2004 memo to all county attorneys and law enforcement agencies, the attorney general identified categories of conduct that generally should be considered potential Laurie material, and the memo required that such material be retained in an officer's personnel file, "so that it is available for in camera review by a court and possible disclosure to a defendant in a criminal case."  Id. at 646 (quotation omitted).  The memo included a sample policy and procedure for police departments to identify and retain Laurie material in their files.  Id.  Under that procedure:

> First, the deputy chief reviews all internal investigation files, including investigations conducted by other police personnel, and determines whether the incident involves any of the categories of conduct identified as potential Laurie material.  If so, the deputy chief sends a memorandum to the chief, who reviews it and determines whether the incident constitutes a Laurie issue.  If it does, the chief notifies the officer involved, who may request a meeting with the chief to present facts or evidence.  After the chief makes a final decision, the chief notifies the county attorney if the incident is ultimately determined to constitute a Laurie issue.

Id.

According to the DOJ, in early 2017, the attorney general updated the "Laurie List" procedure and, for the first time, created the state-wide EES

maintained by the DOJ. The DOJ asserts that the process for putting a police officer's name on the list is "similar to the county Laurie lists, except that names to be added to the EES come to the DOJ from police chiefs after review of their officers' personnel files." The DOJ contends that only "sustained" findings against an officer warrant placement on the EES, meaning that "the evidence obtained during an investigation was sufficient to prove that the act occurred." (Quotations omitted). According to the DOJ, an officer may obtain relief from a sustained finding through union grievance procedures, arbitrations, or other appeals provided to police officers in collective bargaining agreements. The DOJ maintains that it "has not publicly disclosed identifying information on the EES, such as a name or information that might inadvertently reveal an identity," and that it has never deemed the former county-level Laurie lists to be public documents.

C. RSA 105:13-b

The DOJ first argues that RSA 105:13-b precludes the disclosure of the EES. RSA 105:13-b provides:

> I. Exculpatory evidence in a police personnel file of a police officer who is serving as a witness in any criminal case shall be disclosed to the defendant. The duty to disclose exculpatory evidence that should have been disclosed prior to trial under this paragraph is an ongoing duty that extends beyond a finding of guilt.
>
> II. If a determination cannot be made as to whether evidence is exculpatory, an in camera review by the court shall be required.
>
> III. No personnel file of a police officer who is serving as a witness or prosecutor in a criminal case shall be opened for the purposes of obtaining or reviewing non-exculpatory evidence in that criminal case, unless the sitting judge makes a specific ruling that probable cause exists to believe that the file contains evidence relevant to that criminal case. If the judge rules that probable cause exists, the judge shall order the police department employing the officer to deliver the file to the judge. The judge shall examine the file in camera and make a determination as to whether it contains evidence relevant to the criminal case. Only those portions of the file which the judge determines to be relevant in the case shall be released to be used as evidence in accordance with all applicable rules regarding evidence in criminal cases. The remainder of the file shall be treated as confidential and shall be returned to the police department employing the officer.

6

RSA 105:13-b.

The DOJ reasons that the Right-to-Know Law grants every citizen "the right to inspect all government records in the possession, custody, or control of such public bodies . . . except as otherwise prohibited by statute," RSA 91-A:4, I (2013), and avers that RSA 105:13-b is "just such a statute." According to the DOJ, "RSA 105:13-b makes police personnel files strictly confidential with two narrow exceptions," the first requiring that exculpatory evidence in a testifying officer's personnel file be disclosed to a criminal defendant and the second allowing non-exculpatory evidence in a testifying officer's personnel file to be disclosed to a criminal defendant under certain circumstances. Otherwise, the DOJ maintains, police personnel files are "cloak[ed] . . . with the maximum confidentiality that the United States and New Hampshire Constitutions allow." Although the DOJ concedes that "the EES itself does not reside in any one police officer's personnel file," the DOJ maintains that the "physical location of the EES in no way alters the fact that it contains personnel information from the officer's personnel file."

For the purposes of this appeal, we assume without deciding that RSA 105:13-b constitutes an exception to the Right-to-Know Law and that it applies outside of the context of a specific criminal case in which a police officer is testifying. Nonetheless, we reject the DOJ's overly broad interpretation of the statute.

By its express terms, RSA 105:13-b pertains only to information maintained in a police officer's personnel file. RSA 105:13-b addresses three situations involving the personnel files of police officers who appear as witnesses in criminal cases. See Duchesne, 167 N.H. at 781. "First, insofar as the personnel files of such officers contain exculpatory evidence, paragraph I requires that such information be disclosed to the defendant." Id. "Next, paragraph II covers situations in which there is uncertainty as to whether evidence contained within police personnel files is, in fact, exculpatory." Id. Paragraph II "directs that, where such uncertainty exists, the evidence at issue is to be submitted to the court for in camera review." Id. "Finally, paragraph III covers evidence that is non-exculpatory but may nonetheless be relevant to a case in which an officer is a witness." Id. at 782. "Consistent with our case law, this paragraph prohibits the opening of a police personnel file to examine the same for non-exculpatory evidence unless the trial judge makes a specific finding that probable cause exists to believe that the file contains evidence relevant to the particular criminal case." Id.

The express focus of RSA 105:13-b is on information maintained in the personnel file of a specific police officer. Had the legislature intended RSA 105:13-b to apply more broadly to personnel information, regardless of where it is maintained, it would have so stated. Darbouze, 160 N.H. at 697 ("We will neither consider what the legislature might have said nor add words that it did

7

not see fit to include." (quotation omitted)). As the DOJ concedes, "the EES itself does not reside in any one police officer's personnel file." Therefore, disclosure of the EES is not governed by RSA 105:13-b.

In arguing for a contrary result, the DOJ relies upon Worcester Telegram & Gazette v. Chief of Police, 787 N.E.2d 602, 606 (Mass. App. Ct. 2003). Its reliance is misplaced. In that case, a newspaper sought access to the contents of a police department internal affairs file under the Massachusetts public records law. Worcester Tel. & Gazette, 787 N.E.2d at 603-04. The issue was whether the documents were exempt under a statutory exemption for "personnel file or information." Id. at 604 (quotation and brackets omitted). To determine whether the documents were exempt, the court examined "the nature or character of the documents," rather than "their label." Id. at 606 (quotations omitted).

The DOJ invites us to do the same, asserting that because the EES "concerns officer misconduct" and "derives from disciplinary records within police officer personnel files," RSA 105:13-b governs. Given the plain meaning of the language used in RSA 105:13-b, we cannot accept the DOJ's invitation. The court in Worcester Telegraph & Gazette was interpreting a statute with broader language than RSA 105:13-b. There, the statute referred to "personnel file or information." Id. at 605 (quotation and brackets omitted; emphasis added). By contrast, RSA 105:13-b refers only to a police officer's "personnel file" and the exculpatory or non-exculpatory evidence contained therein. RSA 105:13-b, I (concerning "[e]xculpatory evidence in a police personnel file"), III (providing that the "personnel file of a police officer" shall not be opened "for the purposes of obtaining or reviewing non-exculpatory evidence" except under certain circumstances). RSA 105:13-b does not refer to personnel "information" or "practices."

We also decline the DOJ's invitation to defer to its longstanding statutory interpretation under the administrative gloss doctrine. The DOJ contends its longstanding practice of keeping the EES confidential coupled with the legislature's "lack of . . . interference" with that practice "comprises 'administrative gloss' on the statute." See New Hampshire Retail Grocers Ass'n v. State Tax Comm'n, 113 N.H. 511, 514 (1973) ("It is a well-established principle of statutory construction that a longstanding practical and plausible interpretation given a statute of doubtful meaning by those responsible for its implementation without any interference by the legislature is evidence that such a construction conforms to the legislative intent."). However, the administrative gloss doctrine applies only when a statute is ambiguous. State v. Priceline.com, Inc., 172 N.H. 28, 38 (2019). The reference to a police officer's "personnel file" is not ambiguous.

Nor is it doubtful whether the term "personnel file" applies to the EES. An employee's "personnel file" is a file that is "typically maintained in the human resources office" of an employer, "otherwise known . . . as the 'personnel department.'" Milner v. Department of Navy, 562 U.S. 562, 570 (2011). The EES is maintained by the DOJ, not by a police department's personnel office, and, as the DOJ concedes, the DOJ does not employ officers on the EES. Accordingly, the EES is not a "personnel file" within the meaning of RSA 105:13-b. See Reid v. N.H. Attorney Gen., 169 N.H. 509, 528 (2016) (discussing the exemption under the Right-to-Know Law for "personnel . . . files" (quotation omitted)); cf. Abbott v. Dallas Area Rapid Transit, 410 S.W.3d 876, 883-84 (Tex. App. 2013) (concluding that the exemption under the Texas Public Information Act for "'information in a personnel file'" did not apply when there was no evidence that the investigation report of an employee's racial discrimination complaint was in the interviewees' personnel files).

D. RSA 91-A:5, IV

The DOJ next argues that RSA 91-A:5, IV exempts the EES from disclosure under the Right-to-Know Law. RSA 91-A:5, IV exempts from disclosure

[r]ecords pertaining to internal personnel practices; confidential, commercial, or financial information; test questions, scoring keys, and other examination data used to administer a licensing examination, examination for employment, or academic examinations; and personnel, medical, welfare, library user, videotape sale or rental, and other files whose disclosure would constitute invasion of privacy.

RSA 91-A:5, IV. The DOJ asserts that the EES is exempt either because it is a record pertaining to "internal personnel practices" or because it is a "personnel" or "other file[] whose disclosure would constitute invasion of privacy." Id. We address each exemption in turn.

1. Internal Personnel Practices

Until recently, Fenniman had been our seminal case interpreting the "internal personnel practices" exemption. Union Leader Corp. v. Fenniman, 136 N.H. 624 (1993), overruled by Seacoast Newspapers, Inc. v. City of Portsmouth, 173 N.H. ___, ___ (decided May 29, 2020) (slip op. at 9) and Union Leader Corp. v. Town of Salem, 173 N.H. ___, ___ (decided May 29, 2020) (slip op. at 2). In that case, the plaintiff sought "memoranda and other records compiled" during a police department's internal investigation of a department lieutenant who had been accused of making harassing phone calls. Fenniman, 136 N.H. at 625, 626. We broadly construed the "internal personnel practices" exemption to apply to those records because "they document[ed] procedures

9

leading up to internal personnel discipline, a quintessential example of an internal personnel practice." Id. at 626 (quotation omitted). In addition, we adopted a per se rule exempting such materials from disclosure. Id. at 627.

We recently overruled both aspects of Fenniman. See Seacoast Newspapers, Inc., 173 N.H. at ___ (slip op. at 9); Union Leader Corp., 173 N.H. at ___ (slip op. at 2). In Seacoast Newspapers, Inc., 173 N.H. at ___ (slip op. at 9), we overruled Fenniman to the extent that it broadly interpreted the "internal personnel practices" exemption. We concluded that the "internal personnel practices" exemption applies narrowly to records relating to the "internal rules and practices governing an agency's operations and employee relations," and does not apply to "information concerning the history or performance of a particular employee." Seacoast Newspapers, Inc., 173 N.H. at ___ (slip op. at 11). In Union Leader Corp., 173 N.H. at ___ (slip op. at 2, 11), we overruled Fenniman to the extent that it decided that records related to that exemption are categorically exempt from disclosure and are not subject to the balancing test we have used for the other categories of records listed in RSA 91-A:5, IV. See Prof'l Firefighters of N.H. v. Local Gov't Ctr., 159 N.H. 699, 707 (2010) (setting forth a three-step analysis to determine whether disclosure will result in an invasion of privacy).[1]

The DOJ argues that the EES pertains to an "internal personnel practice" under Fenniman. The DOJ's argument is unavailing given that we overruled Fenniman. See Seacoast Newspapers, Inc., 173 N.H. at ___ (slip op. at 9). Because the DOJ does not argue that the EES meets the narrow definition we adopted in Seacoast Newspapers, Inc., we need go no further to reject the DOJ's "internal personnel practice" argument.

### 2. Personnel and Other Files

The trial court found that the EES is not a "personnel file" within the meaning of RSA 91-A:5, IV. Having so found, the trial court concluded that it "need not conduct a . . . balancing test to determine whether an invasion of privacy would result from disclosure of the EES." See Prof'l Firefighters of N.H., 159 N.H. at 707. On appeal, the DOJ does not directly challenge the trial court's finding that the EES is not a "personnel file" under RSA 91-A:5, IV. Instead, the DOJ presses its alternative argument that the EES constitutes an

---

[1] Our well-established three-step analysis is as follows. First, we evaluate whether there is a privacy interest at stake that would be invaded by the disclosure. Lambert v. Belknap County Convention, 157 N.H. 375, 382 (2008). If no privacy interest is at stake, the Right-to-Know Law mandates disclosure. Id. at 383. Second, we assess the public's interest in disclosure. Id. Disclosure of the requested information should inform the public about the conduct and activities of their government. Id. If disclosing the information would not serve this purpose, disclosure is not warranted. Id. Finally, we balance the public interest in disclosure against the government's interest in nondisclosure and the individual's privacy interest in nondisclosure. Id.

"other file[] whose disclosure would constitute invasion of privacy." RSA 91-A:5, IV. The DOJ then asserts that, under our customary balancing test, disclosure of the EES would constitute an invasion of privacy. See Prof'l Firefighters of N.H., 159 N.H. at 707. The trial court, however, did not rule upon the DOJ's alternative argument, and we decline to do so in the first instance. See Union Leader Corp., 173 N.H. at ___ (slip op. at 11). The parties may litigate this issue on remand.[2]

Affirmed in part; vacated and<br>remanded.

HANTZ MARCONI and DONOVAN, JJ., concurred; ABRAMSON and BROWN, JJ., retired superior court justices, specially assigned under RSA 490:3, concurred.

---

[2] We observe that RSA 105:13-b was first enacted in 1992, before we decided Laurie, and, therefore, before the "Laurie List" existed. See Laws 1992, 45:1. We further observe that were Fenniman still in effect, the EES might be per se exempt from disclosure under the Right-to-Know Law, see Fenniman, 136 N.H. at 625-26, and that Fenniman was overruled only months ago, see Seacoast Newspapers, Inc., 173 N.H. at ___ (slip op. at 9); Union Leader Corp., 173 N.H. at ___ (slip op. at 2).