NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by email at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: https://www.courts.nh.gov/our-courts/supreme-court

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Merrimack
Case No. 2022-0578
Citation: Doe v. N.H. Attorney Gen., 2024 N.H. 50


JOHN DOE & a.

v.

NEW HAMPSHIRE ATTORNEY GENERAL & a.

Argued: June 6, 2023
Opinion Issued: September 5, 2024

Milner & Krupski, PLLC, of Concord (Marc G. Beaudoin and John S. Krupski on the brief, and Marc G. Beaudoin orally), for the plaintiffs.

John M. Formella, attorney general, and Anthony J. Galdieri, solicitor general (Emily C. Goering, assistant attorney general, Samuel R.V. Garland, senior assistant attorney general, and Brandon F. Chase, assistant attorney general, on the brief, and Emily C. Goering orally), for the defendants.

DONOVAN, J.

[¶1] The plaintiffs, three retired New Hampshire State Police troopers, appeal an order of the Superior Court (Kissinger, J.) dismissing their complaint for declaratory judgment and injunctive relief that challenged their placement on the Exculpatory Evidence Schedule (EES) pursuant to RSA 105:13-d (2023).

We conclude that the trial court erred in dismissing the plaintiffs' complaint. Accordingly, we reverse and remand.

## I. Facts

[¶2] We accept the following factual allegations as set forth in the plaintiffs' complaint as true for the purposes of this appeal. See Automated Transactions v. Am. Bankers Ass'n, 172 N.H. 528, 532 (2019). Approximately twenty years ago, the plaintiffs worked as patrol troopers for the New Hampshire Division of State Police (the Division). As part of their duties, the plaintiffs were required to conduct a minimum number of traffic stops per shift and to record those stops in activity logs. To comply with the mandated number of traffic stops, the plaintiffs "inflated their enforcement action on the activity logs." For example, the plaintiffs recorded "rolling stops" when they observed a "minor equipment violation" that required the trooper to check the validity of the vehicle owner's driver's license, but which did not involve a stop of the driver's vehicle. The plaintiffs also recorded traffic stops if they were the backup officer responding to a traffic stop initiated by another trooper.

[¶3] Upon learning of the plaintiffs' practices, the Division initiated an internal investigation. The plaintiffs complied with the investigation and acknowledged that they had inflated the information recorded in their respective activity logs. At the conclusion of the investigation, the plaintiffs were disciplined for their conduct but continued their employment with the Division.

[¶4] The plaintiffs' names were added to the "Laurie List" after they were disciplined.[1] A district court later determined, following an in camera review, that the material in the plaintiffs' personnel files was "not exculpatory, and did not require disclosure for impeachment purposes." Approximately one year later, a county attorney notified the plaintiffs that their names were removed from the "Laurie List." However, more than ten years later, the plaintiffs "heard rumors" that their names were reinstated on the "Laurie List." Then, in September 2021, the plaintiffs were notified that their names were in fact included on the EES.[2]

---

[1] See State v. Laurie, 139 N.H. 325, 327, 333 (1995) (overturning a defendant's murder conviction because the State failed to disclose certain employment records of a testifying detective that "reflect[ed] negatively on the detective's character and credibility").

[2] The New Hampshire Department of Justice currently maintains a list of police officers who have engaged in conduct reflecting negatively on their credibility or trustworthiness. N.H. Ctr. for Pub. Interest Journalism v. N.H. Dep't of Justice, 173 N.H. 648, 651 (2020). The list, formerly known as the "Laurie List," is now called the Exculpatory Evidence Schedule. Id.; see RSA 105:13-d, I (2023).

[¶5] In March 2022, the plaintiffs filed a complaint in superior court seeking: (1) a declaration that their names are "not appropriate for inclusion on the EES" pursuant to RSA 105:13-d; (2) a permanent injunction against the New Hampshire Attorney General's Office, also known as the New Hampshire Department of Justice (DOJ), to remove their names from the EES; and (3) a declaration that their due process rights under the New Hampshire and United States Constitutions had been violated. Specifically, they claimed that "the findings that were used to determine their initial placement and [reinstatement on] the EES list were incorrect, misinterpreted, stale, and/or not serious enough to warrant their names' inclusion on the EES." They also claimed that their due process rights were violated when they were not afforded an opportunity to challenge their placement on the EES.

[¶6] The defendants, the New Hampshire Attorney General and the Commissioner of the Department of Safety, moved to dismiss, arguing that the conduct detailed in the plaintiffs' complaint is potentially exculpatory evidence, that the conduct does not warrant removal from the EES, and that the plaintiffs were afforded adequate due process. The plaintiffs objected. In October 2022, following a hearing, the trial court granted the defendants' motion to dismiss, concluding that the plaintiffs' conduct is potentially exculpatory, that their placement on the EES is appropriate, and that the plaintiffs had received adequate due process. This appeal followed.

## II. EES Background

[¶7] Before addressing the plaintiffs' arguments on appeal, we briefly review the background of the EES. See Duchesne v. Hillsborough County Attorney, 167 N.H. 774, 777-80 (2015); Gantert v. City of Rochester, 168 N.H. 640, 645-47 (2016). The starting point for our analysis is the well-recognized proposition that, in a criminal case, the State is obligated to disclose information favorable to the defendant that is material either to guilt or to punishment. Duchesne, 167 N.H. at 777; see Brady v. Maryland, 373 U.S. 83, 87 (1963) ("[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."). The duty to disclose encompasses both exculpatory information and information that may be used to impeach the State's witnesses, United States v. Bagley, 473 U.S. 667, 676 (1985); State v. Laurie, 139 N.H. 325, 327 (1995), and applies whether or not the defendant requests the information, Bagley, 473 U.S. at 680-82; Laurie, 139 N.H. at 327.

[¶8] The duty of disclosure falls on the prosecution. Petition of State of N.H. (State v. Theodosopoulos), 153 N.H. 318, 320 (2006); Giglio v. United States, 405 U.S. 150, 154 (1972). "This in turn means that the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police.'"

3

Duchesne, 167 N.H. at 778 (quoting Kyles v. Whitley, 514 U.S. 419, 437 (1995)).  Favorable evidence is material under the federal standard only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  Duchesne, 167 N.H. at 778.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.  Id.

[¶9] We stated in State v. Laurie that the New Hampshire Constitution affords defendants greater protection than the federal standard and held that, "[u]pon a showing by the defendant that favorable, exculpatory evidence has been knowingly withheld by the prosecution, the burden shifts to the State to prove beyond a reasonable doubt that the undisclosed evidence would not have affected the verdict."  Laurie, 139 N.H. at 330.  This standard does not require that the prosecutor disclose everything that might influence a jury, or that the defendant be provided a complete discovery of all investigatory work or an examination of the State's complete file.  Id.  In Laurie, we held that the prosecution's failure to disclose exculpatory evidence violated the defendant's due process rights under the New Hampshire Constitution, and we ordered a new trial.  Id. at 327, 333.

[¶10]  The circumstances before us in Laurie demonstrated the need for prosecutors and law enforcement agencies to share information that pertains to police officers who may appear as witnesses for the prosecution.  Duchesne, 167 N.H. at 779.  "Since Laurie, prosecutors in New Hampshire have developed 'procedures and regulations . . . to carry [the prosecutor's] burden and to insure communication of all relevant information on each case to every lawyer who deals with it.'"  Id. (quoting Kyles, 514 U.S. at 438).  One aspect of these procedures is the creation of so-called "Laurie Lists."  Id.  In 2004, the attorney general placed responsibility on county attorneys to compile a confidential, comprehensive list of officers in each county who are subject to possible Laurie disclosures.  N.H. Ctr. for Pub. Interest Journalism v. N.H. Dep't of Justice, 173 N.H. 648, 653-54 (2020).  Although prosecutors may use "Laurie Lists" as a tool to identify information about police officers whose personnel files contain information that is subject to possible disclosure, the duty to disclose evidence favorable to a defendant, including both exculpatory evidence and impeachment evidence, is of constitutional magnitude, see Laurie, 139 N.H. at 327-30, and exists independent from the maintenance of such lists.

[¶11]  In 2017, the attorney general updated the "Laurie List" procedure and, for the first time, created the state-wide EES maintained by the DOJ.  N.H. Ctr. for Pub. Interest Journalism, 173 N.H. at 654.  In 2021, the legislature amended RSA chapter 105 by adding RSA 105:13-d, which addresses an officer's placement on the EES.  See Doe v. Attorney General, 175 N.H. 349, 355 (2022); Laws 2021, 225:2.  RSA 105:13-d, I, states that:

4

The [DOJ] may voluntarily maintain an [EES]. The [EES] shall consist of a list of all current or former law enforcement officers whose personnel information contain potentially exculpatory evidence. Subject to the provisions of this section, the [EES] may be maintained by the [DOJ] and shall be a public record subject to RSA 91-A.

[¶12] Officers whose names were added to the EES prior to the enactment of RSA 105:13-d may challenge their placement on the EES by filing a lawsuit in superior court. See RSA 105:13-d, II(a)-(c). RSA 105:13-d, II(d) states, in relevant part, that "individuals and corresponding information on the [EES] shall be made public, except for any individual with a pending legal action regarding the officer's placement on the [EES]." RSA 105:13-d, II(d). However, "[o]nce the pending action has concluded with a final order, after exhausting any applicable appellate rights, the individual's name and corresponding information will become public" unless "a court issues an order finding that the underlying misconduct is not potentially exculpatory" or "[a] court issues an order finding that the law enforcement agency erred in recommending that the officer be placed on the [EES]." Id. RSA 105:13-d, II(e) also provides that once an officer has completed his or her employer's grievance process and has exhausted all available appellate rights, "then the officer's placement on the [EES] shall become permanent."

III. Analysis

[¶13] When reviewing a trial court's ruling on a motion to dismiss, we consider whether the allegations in the pleadings are reasonably susceptible of a construction that would permit recovery. N.H. Ctr. for Pub. Interest Journalism, 173 N.H. at 652. We assume the pleadings to be true and construe all reasonable inferences in the light most favorable to the plaintiffs. Id. We then engage in a threshold inquiry that tests the facts in the complaint against the applicable law. Id. We will uphold the granting of a motion to dismiss if the facts pled do not constitute a basis for legal relief. Barufaldi v. City of Dover, 175 N.H. 424, 427 (2022).

[¶14] The plaintiffs advance numerous challenges to the trial court's dismissal of their complaint, primarily disputing the court's finding that their conduct is potentially exculpatory and, as a result, that their inclusion on the EES is appropriate pursuant to RSA 105:13-d. They assert that because the conduct is over twenty years old, any relevance it may have once had "has long since dissipated." Additionally, the plaintiffs maintain that their conduct was not "fraudulent" and that the Division's finding "was simply a difference in the interpretation of what constituted a 'motor vehicle stop' for the purposes of recording on their weekly duty reports." While the plaintiffs admit that they recorded traffic stops improperly, they maintain that "there was nothing illegal about their actions, nor did their actions violate any defendants' rights." Moreover, although they concede in their complaint that they "inflated their

5

enforcement action on the activity logs," they do not admit to doing so knowingly. Cf. Gantert, 168 N.H. at 647-51 (finding grounds existed for keeping the name of a law enforcement officer on the "Laurie List" who supplied answers on a Lethality Assessment Protocol form that he knew he had no basis to believe were true). The defendants, on the other hand, respond that the plaintiffs "have alleged a set of facts that demonstrate they knowingly reported false information and have thus alleged facts sufficient to show that their general credibility is compromised."

[¶15] The parties' arguments turn on the standard by which conduct is deemed "potentially exculpatory," which, in turn, determines whether an officer's placement on the EES is appropriate. See RSA 105:13-d, I. Because determining whether the plaintiffs' conduct is "potentially exculpatory" requires interpreting RSA 105:13-d, our review is de novo. See Doe, 175 N.H. at 352. We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning. Id. We interpret the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. Id. The legislature is presumed neither to waste words nor enact redundant provisions and, whenever possible, every word of a statute should be given effect. Id. We construe all parts of a statute together to effectuate its overall purpose and to avoid an absurd or unjust result. Id. Moreover, we do not consider words and phrases in isolation, but rather within the context of the statute as a whole. Id.

[¶16] As relevant here, RSA 105:13-d, I, provides that the EES "shall consist of a list of all current or former law enforcement officers whose personnel information contain potentially exculpatory evidence." Once an officer is added to the EES, his or her name and corresponding information will be made public unless, "[i]n a matter in which the [DOJ] is a party, a court issues an order finding that the underlying conduct is not potentially exculpatory" or "[a] court issues an order finding that the law enforcement agency erred in recommending that the officer be placed on the [EES]." RSA 105:13-d, II(d). Because RSA 105:13-d, I, makes the EES publicly available, "[t]he interests served by [the legislature's] decision to provide [an officer] with a court hearing before publicizing his listing on the EES are obvious." Doe v. Town of Lisbon, 78 F.4th 38, 47 (1st Cir. 2023). "The list is valuable to the state and to the public only if it is accurate, and ensuring that listings are thoroughly vetted before being publicized directly furthers that end." Id.

[¶17] We interpret RSA 105:13-d to effectuate its overall purpose, which requires a balancing of the competing interests of prosecutors in meeting their obligations under Brady v. Maryland and officers in protecting their reputations. Indeed, as we observed in Duchesne v. Hillsborough County Attorney, "inclusion on the 'Laurie List' carries a stigma," and "police officers have a weighty countervailing interest in insuring that their names are not placed on the list when there are no proper grounds for doing so." Duchesne,

6

167 N.H. at 782-83.  To accommodate the competing interests at stake, "basic fairness demands that courts not invariably defer to the judgment of prosecutors with respect even to the threshold issue of what kind of adverse information should result in an officer's placement on a 'Laurie List.'"  Id. at 783.[3]

[¶18]  Because the term "potentially exculpatory" is not defined in RSA chapter 105, we look to its common usage, using the dictionary for guidance.  See Bedford Sch. Dist. v. State of N.H., 171 N.H. 246, 250 (2018).  Black's Law Dictionary defines "potential" as "[c]apable of coming into being; possible if the necessary conditions exist."  Black's Law Dictionary 1413 (11th ed. 2019).  In Brady, the United States Supreme Court held that the State is obligated to disclose evidence that is favorable to an accused that is material either to guilt or to punishment, see Brady, 373 U.S. at 87, and in Bagley, the Court clarified that the disclosure obligation includes both impeachment evidence and exculpatory evidence, Bagley, 473 U.S. at 676.  "Favorable evidence includes that which is admissible, likely to lead to the discovery of admissible evidence, or otherwise relevant to the preparation or presentation of the defense."  State v. Dewitt, 143 N.H. 24, 33 (1998).  Therefore, taking the definitions referenced above together with the United States Supreme Court's explanation of exculpatory evidence as set forth in Brady, we hold that, within the context of RSA 105:13-d, "potentially exculpatory evidence" is evidence, including impeachment evidence, that is reasonably capable of being material to guilt or to punishment.

[¶19]  The plaintiffs argue that an officer's name should be removed from the EES after ten years have passed from the date of the conduct which led to the officer being added to the list, provided there are no further incidents bearing upon the officer's general credibility.  As support for this proposition, they rely upon New Hampshire Rules of Evidence 608 and 609, which address the admission of character evidence and impeachment by evidence of a prior criminal conviction respectively.  Because Rule 609(b) imposes a heightened standard for admitting evidence of a prior criminal conviction as impeachment evidence when the conviction is more than ten years old, the plaintiffs argue that similar considerations should be made in assessing the materiality,

---

[3] The dissent does not address the reputational interests police officers possess with respect to their inclusion on the EES or our mandate set forth in Duchesne that courts should not invariably defer to the judgment of prosecutors.  Instead, the dissent asserts that "[t]he net to be cast is broad" and implies that the interpretation of "potentially exculpatory" should be coextensive with a prosecutor's Brady obligation to disclose evidence favorable to an accused.  As we previously observed, a prosecutor's Brady obligation is independent from the DOJ's voluntary maintenance of the EES.  Our colleague's construction also does not consider the purpose of the legislature's decision to provide an officer with a court hearing before publicizing his or her name on the EES.  If the EES net is to be cast as broadly as the dissent suggests, a court hearing would be meaningless.

7

relevance, and probative value of "potentially exculpatory evidence" pursuant to RSA 105:13-d. See N.H. R. Ev. 609(b) (providing that evidence of a prior criminal conviction that is more than ten years old is admissible as impeachment evidence only if its probative value substantially outweighs its prejudicial effect). The defendants disagree, arguing that the plaintiffs' evidentiary arguments conflate the admissibility of evidence with the constitutional obligation to disclose exculpatory evidence.

[¶20] Although the defendants correctly note that the question of whether evidence is appropriate for inclusion on the EES is separate from the question of whether that evidence would be admissible in a criminal proceeding, we agree with the plaintiffs that considerations made to determine the admissibility of evidence, such as the age of the conduct and its materiality to an officer's general credibility, should factor into the determination of whether information in an officer's personnel file warrants his or her inclusion on the EES. If there is no reasonably foreseeable case in which "potentially exculpatory evidence" relating to an officer's conduct would be admissible, due to the passage of a significant length of time or some other factor weighing on the conduct's relevance, an officer's inclusion on the EES would be inappropriate.

[¶21] For example, in Duchesne, the plaintiffs' names were added to the "Laurie List" after the Manchester police chief found that the plaintiffs had violated several departmental policies, including "unnecessary use of force" during an off-duty altercation at a bar. Duchesne, 167 N.H. at 775. We explained that, even if the unnecessary use of force allegations were true, evidence of the incident from which they arose, without more, would not be admissible to impeach the plaintiffs' general credibility because an instance of unnecessary use of force is not probative of the plaintiffs' character for truthfulness. Id. at 784. Although the admissibility of evidence at trial does not mark the bounds of the prosecutor's disclosure obligations, whether or not evidence is admissible has a "strong bearing on the propriety of maintaining the officer's name on a list that is used as the basis for automatically disclosing the information to the trial court or the defendant in any case in which the officer may testify." Id. Accordingly, we held that the officers' names should be removed from the "Laurie List." Id. at 785.

[¶22] Therefore, in any particular case, factors such as the nature and age of the conduct are relevant for the purpose of determining whether information in a personnel file pertaining to an officer is exculpatory and thus subject to Brady disclosures. See id. at 784; cf. Laurie, 139 N.H. at 330 (explaining that prosecutors are not required to "disclose everything that might influence a jury, or that the defendant be provided a complete discovery of all investigatory work or an examination of the State's complete file"). Similarly, such considerations should factor into the determination of whether specific conduct is potentially exculpatory for the purposes of RSA 105:13-d.

8

[¶23] Turning to the case now before us and accepting the plaintiffs' allegations as true, we conclude that the limited record fails to establish whether the plaintiffs' conduct is "potentially exculpatory" under RSA 105:13-d. While the plaintiffs acknowledged that they "inflated" the number of stops recorded on their activity logs, that acknowledgement leaves open the possibility that the plaintiffs' conduct was the result of their interpretation of the policy, albeit one not shared by the Division. If, as the plaintiffs posit, their conduct represented a mistaken interpretation of reporting requirements, their conduct may not reflect negatively on the plaintiffs' general credibility or trustworthiness. As previously observed, the nature of the conduct is a relevant factor for the trial court to consider in determining whether information in an officer's personnel file is "potentially exculpatory." Thus, at this stage of the litigation, viewing the allegations in the light most favorable to the plaintiffs, we conclude that, based upon the record before us, it cannot be determined that the plaintiffs knowingly submitted activity logs with false information or that the plaintiffs acted dishonestly. Accordingly, we hold that it was error for the trial court to grant the defendants' motion to dismiss, and we remand for further proceedings consistent with this opinion.

[¶24] On remand, to determine whether the information in the plaintiffs' personnel files is "potentially exculpatory," RSA 105:13-d, I, the trial court should consider whether there is a reasonably foreseeable case in which the information would be admissible as exculpatory evidence or evidence that could be used to impeach the plaintiffs' credibility. The trial court should weigh, among the factors it deems appropriate, the age and nature of the conduct to determine the possible relevance such information may have in a future criminal case.

IV.    Conclusion

[¶25] In conclusion, we reverse the trial court's order granting the defendants' motion to dismiss and remand for further proceedings consistent with this opinion to determine whether the plaintiffs' conduct is potentially exculpatory.

Reversed and remanded.

BASSETT and COUNTWAY, JJ., concurred; MACDONALD, C.J., dissented; HICKS, J., sat for oral argument but did not participate in the final vote, see N.H. CONST. pt. II, art. 78; HANTZ MARCONI, J., sat for oral argument but did not participate in the final vote.

MACDONALD, C.J., dissenting.

[¶26] I have two primary concerns with the majority opinion. First, it sets aside the plain language of RSA 105:13-d, I (2013), and creates a new and

9

problematic standard for evidence to be included on the Exculpatory Evidence Schedule (EES). Second, I find no error with the trial court's conclusion that the plaintiffs' admitted conduct is potentially exculpatory. For the reasons set forth more completely below, I respectfully dissent.

I.

[¶27] I begin with the standard set forth by the majority. The operative term governing inclusion on the EES involves evidence that is "potentially exculpatory." RSA 105:13-d, I. The majority recites, but then ultimately disregards, the plain meaning of "potential." (defining "potential" as "[c]apable of coming into being; possible if the necessary conditions exist" (quotation omitted)). To be sure, a faithful application of the statute's language results in a standard for inclusion on the EES that is, without doubt, broad.

[¶28] The effect of the majority opinion is to narrow that definition. The actual holding of the case is that potentially exculpatory evidence is "evidence that is reasonably capable of being material to guilt or innocence." (Emphasis added.) "Reasonably capable" is different than "capable." In applying this narrowed standard, the majority suggests that trial courts should consider factors used to determine ultimate admissibility of evidence, thus narrowing the standard even more. Specifically, a court should consider the "age of the conduct," whether the conduct would be admissible due to the "passage of a significant length of time or some other factor weighing on the conduct's relevance," and the conduct's "materiality to an officer's general credibility."

[¶29] The majority's gloss on "potentially exculpatory" raises multiple concerns. First, the breadth of the statutory definition as written reflects a policy determination by the legislature. Such a determination is reserved for the legislature. Doe v. Comm'r, N.H. Dep't of Health & Human Servs., 174 N.H. 239, 260 (2021). The majority undermines that policy determination by adopting a narrower standard for inclusion.

[¶30] Second, it is not at all apparent why, for example, the "age of the conduct" or the "passage of a significant length of time" may render evidence not potentially exculpatory. I am unaware of any legal basis to impose an expiration date on the potentially exculpatory fact that, for instance, an officer lied.

[¶31] Third, the majority directs a trial court interpreting RSA 105:13-d, I, to assess "whether there is a reasonably foreseeable case in which the information would be admissible." This approach invites boundless speculation about hypothetical permutations of facts that may exist under any case brought under any of the crimes defined by the Criminal Code. That effectively renders the analysis one of determining whether the evidence is actually admissible in a hypothetical case under hypothetical facts, as opposed

10

to whether the evidence is potentially exculpatory with admissibility to be determined in an actual case. I respectfully suggest that the analysis the majority vests in the trial court is not only contrary to the statute, but will prove to be unworkable.

[¶32] Finally, the majority's narrowing of "potentially exculpatory" evidence might lead to confusion over a prosecutor's constitutional obligation to disclose. It should not. A prosecutor must disclose "evidence favorable to an accused." Brady v. Maryland, 373 U.S. 83, 87 (1963); see State v. Dewitt, 143 N.H. 24, 33 (1983) (Part I, Article 15 of the New Hampshire Constitution "imposes on the prosecutor the duty to disclose evidence favorable to the accused where the evidence is material either to guilt or to punishment" (quotation omitted)). The net to be cast is broad. See State v. Etienne, 163 N.H. 57, 88 (2011) (Favorable evidence is evidence that is "admissible . . . or otherwise relevant to the preparation or presentation of the defense . . . . Favorable evidence may include impeachment evidence." (quotations and citations omitted)); State v. Dukette, 113 N.H. 472, 477 (1973) ("When there is substantial room for doubt, the prosecution is not to decide for the court what is admissible or for the defense what is useful." (quotation omitted)); see also Roe v. Lynch, 997 F.3d 80, 85 (1st Cir. 2021) ("[D]iscouraging broad disclosure is contrary to the Supreme Court's recognition that a prudent prosecutor should err in favor of disclosure under [Brady v. Maryland].")). The standard set forth by the majority today applies only to disclosure under RSA 105:13-d, I, not to a prosecutor's constitutional obligation to disclose.

II.

[¶33] There is no legal error in the trial court's conclusion that the plaintiffs' conduct is "potentially exculpatory" and, therefore, the court correctly granted the defendants' motion to dismiss. In their complaint, the plaintiffs allege that, following an investigation, they were disciplined for having "inflated their enforcement action" on state police documents. In other words, reports of their enforcement activity were inaccurate.

[¶34] "Inflat[ing]" entries on an official state police document is "enough of a reflection on the plaintiff[s'] general credibility to trigger at least a prosecutor's obligation to disclose such information to a court for in camera review in a case in which the plaintiff will appear as a state witness." Gantert v. City of Rochester, 168 N.H. 640, 650 (2016) (emphasis omitted). The grist of law enforcement is report writing. A report is how an officer memorializes his or her activities, thus creating a record for future use, including in a prosecution. Every step of the investigative process is carefully documented, including crime scene processing, witness interviews, laboratory reports, and analyses. Because such reports may become a basis for restricting an individual's liberty, it is essential to the integrity of the criminal justice system that an officer's reports are completely true and accurate. And, that is among

the reasons, as we have observed, law enforcement officers are held to a higher standard and their conduct will be subject to greater scrutiny. See, e.g., Provenza v. Town of Canaan, 175 N.H. 121, 130-31 (2022).

[¶35] Against this backdrop, the plaintiffs' admitted conduct is "potentially exculpatory" within the meaning of the statute. Whether it would ever be admitted would, of course, be subject to the discretion of a judge presiding over a criminal trial. By directing the trial court on remand in this case to "weigh, among the factors it deems appropriate, the age and nature of the conduct to determine the possible relevance such information may have in a future criminal case," the majority jumps to the ultimate question of admissibility in a legal and factual vacuum. Such an approach is inconsistent with RSA 105:13-d, I.

[¶36] I respectfully dissent.