# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2022-0688, <u>John Doe v. New Hampshire Division of State Police & a.</u>, the court on January 7, 2025, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal and has determined to resolve the case by way of this order. <u>See Sup. Ct. R.</u> 20(2). The plaintiff, John Doe, appeals an order of the Superior Court (<u>Kissinger</u>, J.) dismissing his complaint seeking declaratory judgment pursuant to RSA 105:13-d (2023) and injunctive relief to remove his name from the Exculpatory Evidence Schedule (EES). On appeal, the plaintiff argues that the trial court erred by: (1) failing to consider differences between hearings before the New Hampshire Personnel Appeals Board (PAB) and the superior court, and (2) denying him the opportunity to challenge the underlying conduct that led to his placement on the EES. We conclude that the trial court properly limited its review to determining whether information in the plaintiff's personnel file constitutes "potentially exculpatory evidence." RSA 105:13-d, I. Accordingly, we affirm.

The following facts are derived from the plaintiff's complaint and accompanying documentation and are assumed to be true for the purposes of this appeal. <u>See</u> <u>Boucher v. Town of Moultonborough</u>, 176 N.H. 271, 272 (2023). While employed as a trooper by defendant New Hampshire Division of State Police (Division), the plaintiff cared for his elderly aunt and was the successor trustee of his aunt's trust. In April 2015, the plaintiff and his aunt sought to change the trust from a revocable trust to an irrevocable trust. They consulted with an attorney who proposed that the aunt resign as trustee and name the plaintiff as the new trustee of the trust. The aunt signed a "Resignation of Trustee form," the plaintiff signed an "Acceptance of Trustee form," and the plaintiff became the trustee of the aunt's trust. Soon thereafter, however, the branch manager of the bank where the trust was located contacted the aunt and expressed concern that the plaintiff was "withdrawing large amounts of funds" from the trust. According to the plaintiff, his aunt responded by closing the account at the bank and transferring the assets to a different bank where she made herself the trustee of the trust.

The branch manager at the bank where the trust was originally located also contacted defendant New Hampshire Attorney General's Office (AGO) regarding the plaintiff's depletion of the trust's funds, and the AGO opened an investigation. The AGO interviewed the plaintiff and asked him several times whether he was the trustee of his aunt's trust. The plaintiff responded that he

was not. At the conclusion of the investigation, the AGO "cleared the [plaintiff] of any criminal wrongdoing." However, the AGO contacted the Division based upon its belief that the plaintiff lied during the investigation and recommended that the Division submit the plaintiff's name for placement on the EES.

The Division conducted an internal investigation into the plaintiff's "alleged untruthfulness" during the AGO's investigation. Prior to being interviewed, the plaintiff asked the branch manager at the second bank whether his aunt was the trust's current trustee. The branch manager responded that the aunt was the trustee and the plaintiff was the successor trustee.

During an interview, the plaintiff represented to the Division that he was not the trustee of his aunt's trust and that his aunt remained the trustee. The investigating officer confronted the plaintiff with the "Resignation of Trustee" and "Acceptance of Trustee" forms that the plaintiff and his aunt had signed and the plaintiff's email communications with the attorney. The plaintiff responded that he did not recall signing the document or sending the email communications. The investigating officer determined that the plaintiff "intended all along to take over as trustee and that he planned [his aunt's] resignation and his acceptance of the role of trustee" and recommended disciplinary action. The Division concluded that the plaintiff's responses during the interview were "deceptive and obstructive to the investigation," and it terminated the plaintiff's employment "for lack of integrity in violation of the professional conduct standards." The Division also notified the plaintiff that his name would be added to the EES.

The plaintiff subsequently appealed the termination of his employment to the PAB. Following an evidentiary hearing at which the plaintiff and other witnesses testified, the PAB upheld the Division's termination of the plaintiff's employment. The PAB "found it incredulous that [the plaintiff] had no recollection of the email messages that he sent or of such important documents that he signed" and did not find the plaintiff's testimony credible on this point. The PAB explained that the plaintiff's "refusal to authorize [the Division] to speak with the officers at [the original bank] and to view the transactional records" demonstrated that the plaintiff knew "what he was doing and why." It also observed that the plaintiff admitted that "he did not contact [the attorney with whom he and his aunt had originally consulted] who would have been the obvious best source of definitive information about his and his aunt's status and roles in the trust." The PAB ultimately concluded that the plaintiff "was seeking plausible deniability by only contacting [the second bank's branch manager], who [the plaintiff] would have reason to know was not fully informed about the . . . changes to the trust." The plaintiff unsuccessfully moved for rehearing and filed an appeal in this court, which we dismissed as untimely.

2

In March 2022, the plaintiff filed a complaint in the superior court requesting declaratory judgment that "his name is not appropriate for inclusion on the EES" and a permanent injunction to remove his name from the EES. The defendants moved to dismiss the complaint, and the court granted their motion. The court determined that it did not need to "decide whether the [plaintiff] lied to the AGO or [the Division] during his internal investigation" because the PAB had "already decided that he did so in affirming his termination," and the court did not have jurisdiction to review the PAB's factual findings. The court reasoned that "three different entities (the AGO, the Division, and the PAB) all came to the same conclusion that the [plaintiff] lied during his investigation," and that the "sustained instances of untruthfulness during official investigations bear on the [plaintiff's] general credibility, potentially triggering a prosecutor's obligation to disclose the evidence to a criminal defendant in a case where the [plaintiff's] credibility is at issue." Accordingly, it concluded that the plaintiff's placement on the EES is appropriate. The plaintiff unsuccessfully moved for reconsideration, and this appeal followed.

The standard of review in considering a motion to dismiss is whether the plaintiff's allegations are reasonably susceptible of a construction that would permit recovery. Barufaldi v. City of Dover, 175 N.H. 424, 427 (2022). This threshold inquiry involves testing the facts alleged in the pleadings against the applicable law. Id. The trial court may also consider documents attached to the plaintiff's pleadings, documents the authenticity of which no party disputes, official public records, or documents sufficiently referred to in the complaint. Id. We will uphold the trial court's dismissal if the facts pled do not constitute a basis for legal relief. Id.

The plaintiff argues that the trial court erred by failing "to properly review [his] alleged misconduct in light of the different standards by which the PAB and Superior Court operate." He claims that, due to differences in hearings before the PAB and the superior court, the court should have allowed him to relitigate the PAB's findings because "all the evidence" supported his "position that he did not deliberately lie to investigators," contrary to the PAB's conclusion. Specifically, he argues that because the superior court, unlike the PAB, adheres to the Rules of Evidence, and because "the Division would have the burden of persuasion" in a civil hearing, he should be given the opportunity to "demonstrate that the alleged misconduct . . . did not occur as outlined in the records."

The defendants disagree, arguing that the court properly declined the plaintiff's request to review the PAB's factual findings because the court lacked jurisdiction to do so. In addition, they contend that "[e]ven if a subsequent tribunal were to disagree with the PAB's conclusions," the PAB decision is potentially exculpatory.

3

The question therefore is whether the plaintiff is entitled to a hearing in the superior court regarding his placement on the EES in addition to the PAB employment termination appeal in which he participated. We addressed a similar issue in Gantert v. City of Rochester, 168 N.H. 640, 650-51 (2016). In that case, the Rochester Police Department found that an officer violated two departmental policies, recommended the officer's termination, and informed the officer that it intended to notify the county attorney that the officer's actions could be "Laurie material."[1] Gantert, 168 N.H. at 644. After a meeting, the chief and the officer's union agreed that the chief would not notify the county attorney of the "Laurie issue" until after the police commission made a final decision. Id. Following the police commission's decision to uphold the termination decision and the chief's notification to the county attorney, the officer challenged his discharge before the New Hampshire Public Employee Labor Relations Board (PELRB), which selected an arbitrator. Id. The arbitrator reduced the discipline to suspension without pay but did not rule on the "Laurie List" issue. Id. at 645.

The officer then unsuccessfully brought suit in the superior court to remove his name from the "Laurie List." The officer argued on appeal from the superior court's decision that he received insufficient due process both before and after his placement on the list. Id. at 647. In addressing whether there was a risk of erroneous deprivation of the officer's reputational interest, we observed that the officer's "real complaint about the procedure appears to be that he does not agree with the decisions made." Id. at 649. Because the officer was notified that the chief intended to contact the county attorney regarding potential "Laurie material" prior to the police commission appeal and arbitration, the officer had notice and an opportunity to challenge the police department's "Laurie List" recommendation. See id. at 644-45, 649. Although we agreed that an additional hearing "might be more in-depth," we concluded that "it is not clear that it would add significantly to the accuracy of the outcomes versus the procedure already in place." Id. at 649.

We also addressed the officer's argument that the employment disciplinary process, which culminated in arbitration, was distinct from the "Laurie List" designation process and that, as a result, officers should be provided a separate hearing solely addressing the "Laurie issue." Id. at 650. We disagreed and explained that because both the discipline and the "Laurie List" designation were predicated on the same underlying conduct, having an additional hearing to examine the same facts "would serve little purpose." Id. at 650-51.

---

[1] The "Laurie List," a "list of police officers who have engaged in misconduct reflecting negatively on their credibility or trustworthiness," is now known as the Exculpatory Evidence Schedule (EES). See N.H. Ctr. for Pub. Interest Journalism v. N.H. Dep't of Justice, 173 N.H. 648, 651 (2020). See generally State v. Laurie, 139 N.H. 325 (1995).

4

To reach this conclusion, we relied upon Duchesne v. Hillsborough County Attorney, in which we recognized that an officer may have grounds for judicial relief after his placement on the "Laurie List" if the circumstances that gave rise to placement are clearly shown to be without basis. See id. at 650; Duchesne v. Hillsborough County Attorney, 167 N.H. 774, 784-85 (2015). In Duchesne, we determined that the officers' names should be removed from the "Laurie List" because their conduct would not typically be admissible to impeach their general credibility and, "more importantly," an arbitrator overturned the police chief's initial finding of misconduct. Duchesne, 167 N.H. at 783-85. By contrast, in Gantert, the arbitrator's decision "did not establish that there was no basis for the plaintiff's placement on the 'Laurie List,'" and we concluded that the officer received all the process he was due. Gantert, 168 N.H. at 651.

Here, the plaintiff participated in the Division's investigation that resulted in its finding of misconduct, and the Division informed him that it intended to submit his name for inclusion on the EES when it reached the decision to terminate his employment. The plaintiff then appealed his employment termination to the PAB, which, although it did not separately address the plaintiff's placement on the EES, upheld the Division's finding of misconduct that led to the plaintiff's termination. See Gantert, 168 N.H. at 651 ("Although the arbitrator in this case noted that he had no authority over the [officer's] placement on the 'Laurie List,' . . . his decision was based upon the same information that led to the [officer's] placement on the list."). The PAB denied the plaintiff's motion for rehearing, and the plaintiff failed to timely appeal the PAB's decision to this court.

Furthermore, the Division notified the plaintiff that it intended to submit his name for inclusion on the EES when it terminated his employment prior to the plaintiff's PAB appeal. While the PAB's decision preceded the enactment of RSA 105:13-d, the plaintiff was provided an opportunity to challenge the conduct that led both to his termination and his placement on the EES during his appeal to the PAB. Because the employment termination and the EES designation "were predicated on the same underlying conduct of the plaintiff," id. at 650, we are not persuaded that the plaintiff should be provided an additional hearing in the superior court to relitigate the EES placement. Moreover, we do not find any differences in hearings conducted before the PAB and the superior court sufficient to warrant a separate hearing, and we are not convinced that a different outcome would result regarding the plaintiff's misconduct.

As the trial court explained, the plaintiff "had a full and fair opportunity to present the arguments to the PAB about whether he lied, and indeed provided his own testimony about the underlying facts." Therefore, the trial court found, and we agree, that the "sustained finding sufficiently establishes

[the plaintiff's] misconduct for the purposes of determining whether it is potentially exculpatory."[2]  The only question remaining before the court was "whether the underlying misconduct is not potentially exculpatory."  See RSA 105:13-d, II(d)(1).

Although the trial court's decision preceded our articulation of the standard for determining whether information in an officer's personnel file constitutes potentially exculpatory evidence, its reasoning is consistent with that standard.  See Doe v. N.H. Attorney Gen. (Activity Logs), 176 N.H. 806, 814 (2024), 2024 N.H. 50, ¶18.  We recently explained that "within the context of RSA 105:13-d, 'potentially exculpatory evidence' is evidence, including impeachment evidence, that is reasonably capable of being material to guilt or to punishment."  Id.  Furthermore, "considerations made to determine the admissibility of evidence, such as the age of the conduct and its materiality to an officer's general credibility, should factor into the determination of whether information in an officer's personnel file warrants his or her inclusion on the EES."  Id. at 815, 2024 N.H. 50, ¶20.

Here, the trial court reasoned that the "sustained instances of untruthfulness during official investigations bear on the [plaintiff's] general credibility, potentially triggering a prosecutor's obligation to disclose the evidence to a criminal defendant in a case where the [plaintiff's] credibility is at issue."  Therefore, the trial court concluded that the plaintiff's "personnel information contains potentially exculpatory evidence such that his placement on the EES is appropriate."  See RSA 105:13-d, I, II(d)(1).

We agree.  The plaintiff's responses during the investigations conducted by the AGO and the Division were deceptive, and evidence of this misconduct is reasonably capable of being material to guilt or to punishment.  See Doe, 176 N.H. at 814, 2024 N.H. 50, ¶18.  Therefore, the trial court correctly determined that the plaintiff failed to demonstrate that the information in his personnel file

---

[2] The plaintiff also argues that the trial court erred by applying the doctrine of collateral estoppel in declining to allow him to relitigate the PAB's findings.  However, the defendants never pleaded, and the trial court's order therefore did not address, the doctrine of collateral estoppel.  See Gray v. Kelly, 161 N.H. 160, 164 (2010) (stating that collateral estoppel is an affirmative defense); Super. Ct. R. 9(d) (failure to plead affirmative defenses constitutes waiver).  Therefore, we need not address whether collateral estoppel bars the parties from relitigating the issues already decided by the PAB.

does not contain potentially exculpatory evidence such that his name should be removed from the EES.  See RSA 105:13-d, I.

Affirmed.

BASSETT, DONOVAN, and COUNTWAY, JJ., concurred.

**Timothy A. Gudas,<br>Clerk**