# THE STATE OF NEW HAMPSHIRE

## SUPREME COURT

**In Case No. 2023-0456, <u>John Doe v. Town of Hanover Police Department & a.</u>, the court on January 16, 2025, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, has considered the oral arguments of the parties, and has determined to resolve the case by way of this order. <u>See</u> <u>Sup. Ct. R.</u> 20(2). The plaintiff, John Doe, appeals an order of the Superior Court (<u>MacLeod</u>, J.) granting the motion to dismiss filed by defendant New Hampshire Attorney General's Office (AGO) and joined by defendant Town of Hanover Police Department (HPD). The plaintiff sought a declaratory judgment and an injunction to remove his name from the Exculpatory Evidence Schedule (EES), asserting that the findings that led to his placement on the EES were "misinterpreted, taken out of context, and/or not serious enough to warrant his name's inclusion on the EES." <u>See</u> RSA 105:13-d (2023). The trial court concluded that the plaintiff's personnel file contains information that is potentially exculpatory, that his inclusion on the list was warranted, and that HPD had afforded him sufficient due process before it placed him on the EES. The trial court therefore dismissed the complaint. We reverse and remand.

I.    <u>Background</u>

The following facts are derived from the plaintiff's complaint and accompanying documentation and are assumed to be true for the purposes of this appeal. <u>See</u> <u>Boucher v. Town of Moultonborough</u>, 176 N.H. 271, 272 (2023).

In 2017, the plaintiff was hired by HPD as a police officer. In 2019, the plaintiff applied for a position at the Police Standards and Training Council (PSTC). The plaintiff thereafter received a phone call from an individual who advised the plaintiff not to apply for the position, and that if the plaintiff did apply, the individual would report financial misconduct that he asserted the plaintiff had engaged in when the plaintiff was employed by another police department in the state. The plaintiff did not withdraw his application, and the individual contacted the New Hampshire Department of Safety to report his concern about the plaintiff. The matter was then referred to the AGO to investigate. In April 2020, the AGO advised the HPD Chief that it had completed its investigation and that it would not be bringing charges against the plaintiff. The AGO informed the HPD Chief that it had determined that it

could not sustain its burden of proving a criminal charge, in part because it could not prove that the plaintiff had acted with the requisite criminal intent.

Thereafter, HPD contracted with Municipal Resources, Inc. (MRI) to complete an internal investigation into the allegation. In June 2020, MRI issued a detailed report exploring issues relating to the alleged criminal wrongdoing. The report also addressed events surrounding two polygraph examinations of the plaintiff in 2005 and 2007 that were conducted when the plaintiff first applied for positions at the PSTC, and examined whether the plaintiff had withheld or failed to fully disclose information when he applied to HPD in 2017. The MRI report concluded that "any administrative issue against [the plaintiff] regarding [the alleged criminal offense] is **NOT SUSTAINED**." However, the MRI report concluded that the plaintiff should be placed on the EES because the 2005 and 2007 polygraph reports "could be considered exculpatory evidence as they may impact [the plaintiff's] credibility." The MRI report also concluded that the plaintiff's "failure to fully disclose information in his background, may have affected [the HPD Chief's] hiring decision and violated" certain provisions in the HPD questionnaires the plaintiff completed during the hiring process.

On August 26, 2020, the HPD Chief met with the plaintiff and his attorney so that the plaintiff could provide the Chief with information to consider before making a final decision about whether the plaintiff should be placed on the EES. Following the meeting, the plaintiff submitted a letter of resignation, effective September 1, 2020. On September 16, 2020, the Chief informed the plaintiff that he believed that he was "legally required" to submit the plaintiff's name for inclusion on the EES. At the time the plaintiff's name was added to the list, the AGO did not disclose personal identifying information on the EES. See N.H. Ctr. for Pub. Interest Journalism v. Dep't of Justice, 173 N.H. 648, 654 (2020).

On October 30, 2020, we held that the EES "is neither 'confidential' under RSA 105:13-b nor exempt from disclosure under the Right-to-Know Law as an 'internal personnel practice' or a 'personnel file.'" Id. A year later, the legislature enacted RSA 105:13-d, permitting the maintenance of a state-wide EES and permitting officers to file a lawsuit challenging their placement on the EES. RSA 105:13-d. The statute provides that an officer's name and corresponding information on the EES will become public unless "a court issues an order finding that the underlying misconduct is not potentially exculpatory" or "[a] court issues an order finding that the law enforcement agency erred in recommending that the officer be placed on the [EES]." RSA 105:13-d, II(d)(1)-(2).

On December 22, 2021, the plaintiff filed a complaint challenging his placement on the EES. The plaintiff asserted that he was entitled to a de novo hearing on the underlying facts and circumstances that were relied upon in

2

determining that his name should be included on the EES, and that after a full hearing on the merits, the trial court should order the plaintiff's name removed from the EES. He further argued that RSA 105:13-d and due process require that he be provided with "an opportunity to be heard by the Superior Court in order to determine if there is sufficient cause for an officer's name to be included on the EES." The complaint makes clear that the plaintiff does not agree that he deliberately lied or intentionally withheld information. The defendants moved to dismiss the complaint, arguing that RSA 105:13-d does not provide for a de novo hearing on the underlying investigation, that the plaintiff's placement on the EES was proper, that his name should remain on the list, and that he received adequate due process. The trial court granted the motion to dismiss after ruling that RSA 105:13-d does not provide the plaintiff a right to a de novo hearing; that even if it did, "the undisputed facts in this case show that the HPD was warranted in recommending that the [plaintiff] be placed on the EES"; and that the plaintiff's due process rights were not violated. The plaintiff unsuccessfully moved for reconsideration. This appeal followed.

II.     Analysis

In reviewing an order granting a motion to dismiss, we assume the truth of the facts as alleged in the plaintiff's pleadings, and construe all reasonable inferences in the light most favorable to the plaintiff. Boucher, 176 N.H. at 273. The standard of review in considering a motion to dismiss is whether the plaintiff's allegations are reasonably susceptible of a construction that would permit recovery. Id. This threshold inquiry involves testing the facts alleged in the pleadings against the applicable law. Id. The trial court may also consider documents attached to the plaintiff's pleadings; documents, the authenticity of which is not disputed by the parties; official public records; and documents sufficiently referred to in the complaint. Id. at 273-74. We will uphold the granting of a motion to dismiss if the facts pled do not constitute a basis for legal relief. Id. at 274.

RSA 105:13-d requires a court to balance two competing interests. See Doe v. N.H. Attorney Gen. (Activity Logs), 176 N.H. 806, 813-14 (2024), 2024 N.H. 50, ¶17. On one side is the interest of prosecutors in meeting their obligations under Brady v. Maryland to disclose information to a criminal defendant that is material either to guilt or to punishment. Id.; Duchesne v. Hillsborough County Attorney, 167 N.H 774, 777 (2015); Brady v. Maryland, 373 U.S. 83, 87 (1963). The list is a means of sharing information about officer misconduct to facilitate prosecutors' compliance with this constitutional obligation to disclose. See Doe v. Town of Lisbon, 78 F.4th 38, 42 (1st Cir. 2023). On the other side is the interest of officers in protecting their reputations. See Duchesne, 167 N.H at 782-83. As a consequence of the fact that the list is public, an officer's inclusion on the list "is a form of official public branding by the state," and "[t]he effects of such an official public

3

branding on one wishing to work as a police officer are likely to be immediate and concrete." Town of Lisbon, 78 F.4th at 47. "To accommodate the competing interests at stake, basic fairness demands that courts not invariably defer to the judgment of prosecutors with respect even to the threshold issue of what kind of adverse information should result in an officer's placement on [the EES]." Doe v. N.H. Attorney Gen. (Activity Logs), 176 N.H. at 814, 2024 N.H. 50, ¶17 (quotation omitted).

We recently held that "within the context of RSA 105:13-d, 'potentially exculpatory evidence' is evidence, including impeachment evidence, that is reasonably capable of being material to guilt or to punishment." Id. at 814, 2024 N.H. 50, ¶18 (emphasis added). As the trial court noted, the rule requiring disclosure applies to impeachment evidence because "[t]he jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend." State v. Laurie, 139 N.H. 325, 327 (1995) (quotation omitted). In Doe v. N.H. Attorney General (Activity Logs), we stated that we "agree[d] with the plaintiffs that considerations made to determine the admissibility of evidence, such as the age of the conduct and its materiality to an officer's general credibility, should factor into the determination of whether information in an officer's personnel file warrants his or her inclusion on the EES." Doe, 176 N.H. at 815, 2024 N.H. 50, ¶20 (emphasis added). We stated that "in any particular case, factors such as the nature and age of the conduct are relevant for the purpose of determining whether information in a personnel file pertaining to an officer is exculpatory and thus subject to Brady disclosures." Id. at 816, 2024 N.H. 50, ¶22. "If there is no reasonably foreseeable case in which 'potentially exculpatory evidence' relating to an officer's conduct would be admissible, due to the passage of a significant length of time or some other factor weighing on the conduct's relevance, an officer's inclusion on the EES would be inappropriate." Id. at 815, 2024 N.H. 50, ¶20.

The plaintiff disputes that the nature of his conduct justifies his inclusion on the EES. He asserts in his complaint that he has never agreed with the contents of the file, and that he did not "deliberately" lie or make "intentional misstatements of facts." As in Doe v. N.H. Attorney General (Activity Logs), we are unable to determine from the limited record before us whether the plaintiff's conduct is "potentially exculpatory" under RSA 105:13-d. Accordingly, we conclude that the trial court erred in dismissing the plaintiff's complaint, and reverse and remand for further proceedings

consistent with this order and our decision in <u>Doe v. N.H. Attorney General (Activity Logs)</u>.

<u>Reversed and remanded</u>.

BASSETT, DONOVAN, and COUNTWAY, JJ., concurred.

**Timothy A. Gudas,
Clerk**