# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2024-0142, <u>Anthony Pivero v. Attorney General
& a.</u>, the court on June 27, 2025, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, and has determined to resolve the case by way of this order. <u>See</u> <u>Sup. Ct. R.</u> 20(3). The plaintiff, Anthony Pivero, appeals an order of the Superior Court (<u>Tucker</u>, J.) granting the motions to dismiss filed by the defendants, the Attorney General and the City of Nashua (City). The plaintiff filed an amended complaint seeking an injunction to remove his name from the Exculpatory Evidence Schedule (EES). <u>See</u> RSA 105:13-d (2023). The trial court ruled that the complaint did not establish that the plaintiff's procedural due process rights were violated, and that the plaintiff did not state a viable claim that the finding that he was untruthful during an internal investigation was not potentially exculpatory. We vacate and remand.

I.    <u>Background</u>

The following facts are derived from the plaintiff's complaint and accompanying documentation and are assumed to be true for the purposes of this appeal. <u>See</u> <u>Boucher v. Town of Moultonborough</u>, 176 N.H. 271, 272 (2023).

On or about May 9, 2002, the plaintiff was working as a police officer for the Nashua Police Department (NPD) when he was asked by his sergeant to provide Spanish translation to a citizen reporting a crime. A disagreement with his sergeant ensued after the plaintiff repeatedly refused to act as a translator. Thereafter, the NPD conducted an internal investigation into the matter, and it was determined, among other things, that the plaintiff had been untruthful during the investigation when he was interviewed about the incident. The investigation determined that

> [w]hen asked when he had last provided translation services similar to what was being requested of him at that time, involving the Detective Bureau and a criminal investigation, [the plaintiff] replied "I've actually not been involved it's numerous years, numerous, like I said, when I first came on the job was when I got involved in stuff . . . . When in fact, [the plaintiff] provided similar translation services during felony investigations in September 2000 as well as March and August 2001.

[The plaintiff] said that once ordered, he complied and asked "what do you want me to do," denying that he continued to argue with the sergeant after he was ordered to translate. In fact several witnesses independently indicated that he continued to argue and suggest this would be "a huge issue."

In a June 28, 2002 letter, the Chief notified the plaintiff of the findings of the internal investigation and of NPD's intent to discipline him. The plaintiff was notified of his right to a pre-disciplinary hearing with the Chief. Following the hearing, which was attended by the plaintiff and his attorney, the Chief notified the plaintiff that he would be suspended for 16 days without pay and that he would be demoted from master patrolman. The plaintiff filed a grievance with the Nashua Board of Police Commissioners (Board).

On August 13, 2002, the Board sent a letter to the plaintiff stating that it had received the plaintiff's grievance, and that the Board had been notified by the plaintiff's union representative that the plaintiff had chosen to waive his right to a hearing before the Board. The Board sustained the discipline imposed, finding that the plaintiff had told investigators, "unequivocally, that [he had] not been involved in translation services for felony level case[s] since first coming to the department, approximately nine years ago when in fact, the aforementioned cases from 2000 and 2001 clearly indicate otherwise." The report also stated that:

When reviewing the evidence and facts at hand, the [Board] finds that a fair procedural system was followed. You were allowed to have union representation, received a gist of the evidence supporting the final results of the internal investigation, notified of possible disciplinary action(s), had a reasonable opportunity to make a defense, and were allowed to make that defense to the Chief of Police. You did not take the opportunity to make your defense directly to the Board of Police Commissioners and chose to utilize the Grievance Procedure.

In August 2002, the plaintiff's attorney filed for arbitration with the New Hampshire Public Employee Labor Relations Board (PELRB). Shortly thereafter, following the plaintiff's involvement in a police shooting, the plaintiff was placed on administrative leave. The plaintiff did not return to duty because he was approved for accidental disability retirement and retired in May 2003. The City never acted upon the plaintiff's request for arbitration, and the case was never heard before the PELRB.

In September 2021, the Department of Justice notified the plaintiff that his name had been added to the EES in 2017. The plaintiff thereafter filed a complaint, and later an amended complaint, seeking to have his name removed from the EES. The Attorney General and the City filed motions to dismiss,

which the trial court granted. The plaintiff unsuccessfully moved for reconsideration. This appeal followed.

II.     Analysis

In reviewing an order granting a motion to dismiss, we assume the truth of the facts as alleged in the plaintiff's pleadings and construe all reasonable inferences in the light most favorable to the plaintiff. Boucher, 176 N.H. at 273. The standard of review in considering a motion to dismiss is whether the plaintiff's allegations are reasonably susceptible of a construction that would permit recovery. Id. This threshold inquiry involves testing the facts alleged in the pleadings against the applicable law. Id. The trial court may also consider documents attached to the plaintiff's pleadings; documents, the authenticity of which is not disputed by the parties; official public records; and documents sufficiently referred to in the complaint. Id. at 273-74. We will uphold the granting of the motion to dismiss if the facts pled do not constitute a basis for legal relief. Id. at 274.

RSA 105:13-d, I, provides that "[t]he department of justice may voluntarily maintain an [EES]," which "shall consist of a list of all current or former law enforcement officers whose personnel information contain potentially exculpatory evidence." The statute further provides that an officer may challenge his or her placement on the list in superior court, and "the individual's name and corresponding information will become public" unless a court issues an order finding "that the underlying misconduct is not potentially exculpatory" or "that the law enforcement agency erred in recommending that the officer be placed on the [EES]." RSA 105:13-d, II(d)(1)-(2).

The plaintiff argues that the trial court erred when it concluded that the information in his personnel file was potentially exculpatory and that the plaintiff had received sufficient procedural due process in the disciplinary matter such that no additional process was required before the plaintiff's name could be placed on the public EES. Specifically, the trial court found that the procedures used in the disciplinary matter "ma[de] it unlikely any impairment of [the plaintiff's] reputation would be erroneous." The trial court found the information in the plaintiff's personnel file potentially exculpatory because "a trial court might admit the findings of untruthfulness as acts probative of [the plaintiff's] general credibility and character for truthfulness or untruthfulness." The trial court's ruling preceded our decision in Doe v. New Hampshire Attorney General (Activity Logs), 176 N.H. 806, 814 (2024), 2024 N.H. 50, ¶18.

In Doe (Activity Logs), we held that "within the context of RSA 105:13-d, 'potentially exculpatory evidence' is evidence, including impeachment evidence, that is reasonably capable of being material to guilt or to punishment." Doe (Activity Logs), 176 N.H. at 814, 2024 N.H. 50, ¶18 (emphasis added). The rule requiring disclosure of information favorable to a criminal defendant applies to

3

impeachment evidence because "[t]he jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend." State v. Laurie, 139 N.H. 325, 327 (1995) (quotation omitted). In Doe (Activity Logs), we stated that we "agree[d] with the plaintiffs that considerations made to determine the admissibility of evidence, such as the age of the conduct and its materiality to an officer's general credibility, should factor into the determination of whether information in an officer's personnel file warrants his or her inclusion on the EES." Doe (Activity Logs), 176 N.H. at 815, 2024 N.H. 50, ¶20. We stated that "in any particular case, factors such as the nature and age of the conduct are relevant for the purpose of determining whether information in a personnel file pertaining to an officer is exculpatory and thus subject to Brady disclosures." Id. at 816, 2024 N.H. 50, ¶22; cf. Brady v. Maryland, 373 U.S. 83, 87 (1963). "If there is no reasonably foreseeable case in which 'potentially exculpatory evidence' relating to an officer's conduct would be admissible, due to the passage of a significant length of time or some other factor weighing on the conduct's relevance," then an officer's inclusion on the EES is not warranted. Doe (Activity Logs), 176 N.H. at 815, 2024 N.H. 50, ¶20. In light of this new standard, we vacate the trial court's ruling that the information contained in the plaintiff's personnel file is potentially exculpatory. On remand, the trial court shall hold whatever proceedings it deems necessary to determine whether, in light of this new standard, the information contained in the plaintiff's personnel file is potentially exculpatory. Id. at 816, 2024 N.H. 50, ¶22.

We do not agree with the trial court's conclusion with respect to due process. Under RSA 105:13-d, the issue is whether the plaintiff received adequate due process with respect to the conclusion that he engaged in potentially exculpatory conduct. RSA 105:13-d, II(e). Under the unique circumstances of this case, we cannot conclude, as a matter of law, that the process was adequate. The defendants argue that the plaintiff received process we held to be constitutionally sufficient in Gantert v. City of Rochester, 168 N.H. 640 (2016). In that case, an arbitrator made factual findings with respect to the nature of the conduct and considered the propriety of the discipline. Id. at 644. Here, however, the plaintiff retired and arbitration was never scheduled. We further note that the plaintiff's allegations in his amended complaint — which at this stage of the proceedings must be accepted as true — expressly deny being untruthful. Untruthfulness is the alleged exculpatory conduct at issue. Specifically, the amended complaint alleges that the plaintiff's conduct during the internal investigation is not potentially exculpatory because the plaintiff responded to questions "based on his best recollection," and not in an "attempt to mislead or deceive." Particularly in light of the fact that the arbitration of the plaintiff's case was never scheduled and that arbitration would have, presumably, resulted in factual findings bearing on the alleged exculpatory conduct, the plaintiff is entitled to further

"due process proceedings." RSA 105:13-d, II(e). We leave it to the trial court to determine the nature and scope of those proceedings under the circumstances of this case. See id.

For the foregoing reasons, we vacate the trial court's ruling that the information contained in the plaintiff's file was potentially exculpatory, and remand for proceedings consistent with this order.

Vacated and remanded.

MACDONALD, C.J., and BASSETT, DONOVAN, and COUNTWAY, JJ., concurred.

**Timothy A. Gudas,**
**Clerk**
